**J. H. WOODSON**

v.

**J. M. FULTON, etc., et al.**

**Civ. A. No. 73-392-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 17, 1974.

George W. Warren, IV, Richmond, Va., for plaintiff.

W. Barrett Disney, Jr., Asst. City Atty., Richmond, Va., for defendants.

MEMORANDUM

MERHIGE, District Judge.

Plaintiff, J. H. Woodson, a patrolman with the Richmond City Bureau of Police, alleges deprivation of his constitutional rights by defendant Fulton, Director of Public Safety for the City of Richmond, and defendant Duling, Chief of Police for the City of Richmond. Jurisdiction is attained pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4). The case is presently before the Court on defendants' amended motion for summary judgment and plaintiff's response thereto. Both sides have submitted memoranda, and upon the materi-

als before it, the Court deems the matter ripe for disposition.

In its order and memorandum of April 16, 1974, the Court denied defendants' motion for summary judgment finding that it was not clear that "infringement of protected interests of the plaintiff without the opportunity for some kind of prior due process hearing is not imminent." (p. 12). The memorandum also left outstanding the question of the constitutional adequacy of notice for such post-action hearing procedures as did exist. At the same time, the Court found a claim by the plaintiff relating to a reprimand all reference to which has been expunged from plaintiff's police records to be moot. Defendants have now moved for reconsideration in light of Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), handed down by the Supreme Court the same day this Court issued its order. Plaintiff has cross-moved for reconsideration of the mootness of the above described claim.

*Arnett, supra,* involved the discharge without prior evidentiary hearing of an employee of the Office of Economic Opportunity (OEO) for allegedly having made recklessly false and defamatory statements about other OEO employees. The discharged employee's argument was similar to that advanced by plaintiff here: that under the Due Process Clause he was constitutionally entitled to an evidentiary hearing *prior* to termination of his employment since such termination would infringe both property and liberty interests.

There was no majority opinion in *Arnett*. Rather there was a mosaic of individual opinions from which the intent of the Supreme Court must be distilled. The ramifications of those opinions as they affect this case are best addressed in two parts; those dealing with alleged deprivation of property interests and those dealing with alleged infringement of employees' "liberty" interest resulting from dismissal or other disciplinary action by the government.

The "Property Interest" Claim:

The plurality opinion in *Arnett*, written by Mr. Justice Rehnquist and joined by the Chief Justice and Mr. Justice Stewart, focussed upon the Lloyd-La-Follette Act which provided the statutory base for continued employment in that case:

> . . . [N]o person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except at the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished copies of the same upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same . . . .

Act of August 24, 1912, c. 389, § 6, 37 Stat. 555.

Reasoning from that statute, the plurality found that:

> . . . where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet.

416 U.S. at 153, 94 S.Ct. at 1644. The plurality justices found the property right itself limited and did not reach the question of what procedures the Consti-

tution required for the termination of government employment.

Mr. Justice Powell, joined by Mr. Justice Blackmun, found that the right to procedural due process was "conferred not by legislative grace but by constitutional guarantee. While the legislature may elect not to confer a property interest in federal employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." 416 U.S. at 167, 94 S.Ct. at 1650. Nonetheless, these two justices found a post discharge hearing adequate on the facts before them on the basis of independent constitutional analysis.

The remaining four justices, in three opinions, agreed with Mr. Justice Powell that once a property right had been granted, independent constitutional analysis determined the nature of the procedures required for deprivation, but all four found that an evidentiary hearing was constitutionally required *prior* to discharge.

Thus this Court is confronted with five views upholding a procedure allowing a post-discharge hearing together with six views vitiating the rationale of three of the original five. Fortunately, the Court need not at this time resolve the tension created by these opinions.

Perhaps the only point on which all nine justices seemed to concur was that a property interest in continued employment is not a necessary concomitant of possession of a government job. All pointed out what the plurality emphasized, that the property interest of which each spoke, the legitimate "expectancy" of continuation, found its genesis in statutory language or established de facto practice. See 416 U.S. 134, 94 S.Ct. 1633 (Rehnquist, J.); *Id.* 206 Marshall, J.); *Id.* 164 (Powell, J.); *Id.* 171 (White, J.).

█ In the instant case the specific nature of plaintiff's property interest has not been addressed by counsel. However, some expectancy for persons such as plaintiff of continued employment absent cause is contained in Section 9.08 of the City Charter:

> . . . All original appointments shall be for a probationary period the conditions of which shall be governed by the rules established by the personnel board. Members of the classified service shall be subject to such disciplinary action, including removal as may be ordered or approved by the officer having the power of appointment to the position held by the person to be disciplined. Prior to the conclusion of the probationary period of any employee his service may be terminated by such officer if in the opinion of such officer the employee does not possess the qualifications required by the position to which he was appointed. Upon the conclusion of the probationary period no member of the classified service shall be suspended for more than sixty days, reduced in rank or pay or removed except after notice in writing of the grounds of the proposed disciplinary action and an opportunity to be heard thereon by the personnel board. If within five days following the service of such notice an employee shall deliver to the office of the chairman of the personnel board a written request for a hearing, then the board shall fix a time and place for such hearing, which may be public at the option of the employee, to be held within a reasonable time after the receipt of such request, and notify the employee thereof; provided, that in the case of employees of the school board the request for such hearing shall be addressed to the school board and the hearing held by that board. The decision of the personnel board or school board, as the case may be, either sustaining, reversing or modifying the disciplinary action appealed from, shall be final.

Thus following a probationary period, members of the classified service such as plaintiff become the beneficiaries of an expectancy that their employment will not be significantly disrupted without cause. Furthermore, if de facto un-

derstanding providing for action only on a showing of "cause" creates a property interest in maintenance of an employment status, see Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); see also Board of Regents of State College v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *Arnett, supra*, then any punitive disciplinary suspension depriving an employee of his opportunity to work is an infringement of a property interest. Any such "punishment" is by definition for "cause" and due process is required.

Two situations were discussed in the Court's previous memorandum; one dealt with severe punishment including suspension of more than five days for which a pre-action hearing on appeal appeared called for by the City Charter and the other was a suspension of less than five days or reprimand for which a post action hearing was contemplated. The Court at that time indicated that the former appeared constitutionally sound and the latter problematic. Upon new material subsequently submitted, and upon its reading of *Arnett*, the Court is inclined to reconsider both findings.

With regard to potential suspension of less than five days, the Court's earlier conclusion was based primarily on what it considered potential infringement of plaintiff's liberty interest. The law in that respect was, in the Court's opinion, significantly modified by *Arnett*, and that modification is discussed *infra*. With regard to property arising from such minor disciplinary action, the "resolution of this issue depends on a balancing process in which the Government's interest in expeditious [action] is weighed against the interest of the affected employee." *Arnett, supra*, 416 U.S. at 167, 94 S.Ct. at 1651. (Powell, J. concurring). It must be remembered that we are talking here of no more than a four day suspension. Furthermore, back pay is available if the employee

should later be vindicated at his hearing. While the government in such a case might provide for a pre-action hearing, it has chosen to make its disciplinary action temporarily proximate to the perceived offense. The hardship of this brief interruption in employment is minimal and utterly unlike the situation in cases such as Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), or even *Arnett, supra*. See Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). In all, the subsequent evidentiary hearing discussed in the Court's previous memorandum is constitutionally adequate in dealing with the minimal interruption of the particular "subspecies" of property interest here alleged. Cf. *Arnett, supra*.[1]

With regard to the category of discipline actions including discharge and extended suspension, the City Charter states that such action shall not be taken "except *after* notice in writing of the grounds of the proposed disciplinary action and *an opportunity to be heard thereon by the personnel board*." (emphasis added). In its previous memorandum the Court took this language to indicate a legislative decision to require a hearing prior to prolonged suspension or dismissal. Counsel for the defendants, however, by letter of April 22, 1974, has candidly informed the Court that it is City "policy" to "give written notice to an employee of his right to appeal to the Personnel Board concurrently with written notice concerning punishment." This raises some confusion in the Court's mind. If a hearing is contemplated under City "policy" before the punishment noticed becomes effective, the Court's previous ruling will stand. If, however, defense counsel's communication indicates that a *prior* hearing is not granted for prolonged suspension or discharge, then defendants are on tenuous ground and receive little help from *Arnett*. In *Arnett* the three crucial plu-

1. The balance involved in this decision is further discussed with regard to the Court's resolution of the "liberty" interest issue, *infra*.

rality votes were based upon a finding of a limited, statutorily created property interest, i. e., an interest rising only to the protection of post-action procedures which the statute enunciated. Here there is no such limitation upon the interest created. In fact, the statute creating the interest calls for a preaction hearing. The Court cannot assume that the three plurality justices approving post-action relief in the *Arnett* context would all reach a similar conclusion on the different theory advanced by Justice Powell.[2] The constitutionality of the City's dealings with prolonged suspension and dismissal therefore remains an open question on both factual and legal grounds.

The "Liberty Interest" Claim.

It was this argument that most troubled the Court in its previous memorandum. There the Court found that the public aspects of even a brief suspension or official reprimand "might well under *Roth* constitute infringement of a protected interest without due process despite the availability of post-action review," p. 11. This issue was squarely addressed by the plurality in *Arnett* in constitutional terms:

> But that liberty is not offended by dismissal itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee. Since the purpose of the hearing in such a case is to provide the person "an opportunity to clear his name," a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause.

416 U.S. at 157, 94 S.Ct. at 1646. Justices Powell and Blackmun reached a similar conclusion. 416 U.S. 171, n. 6, 94 S.Ct. 1633.

This language manifests a perceptible shift in the constitutional atmosphere surrounding due process in the area of government employment. It is a movement away from the highly sensitized concern for pre-action procedures except in highly unusual circumstances which was evident in *Roth* and *Fuentes* and toward, or back to, the case by case balancing which appeared to underlie Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ In pursuing this balancing approach plaintiff points out that the pretermination procedures in *Arnett*, although not involving a trial-type hearing, were considerably more extensive than the mere right to reply after 12 hours notice which appears in this case and that the initial decision in *Arnett* was thus insured of a greater reliability. There are several other differences in the present case, however, and most of them cut against the plaintiff. Here, the stigma attaching to a four day suspension is relatively slight. It does not represent a finding that an employee is unfit to be a policeman, but only that he committed a relatively minor infraction. An employee who is briefly suspended is not faced with the immediate necessity of seeking alternative employment with his competence or trustworthiness under a cloud. Further, as discussed with regard to property infringement, the theory that efficiency and discipline can best be promoted in the use of such low level deterrents as a brief suspension if the punishment follows immediately upon the employer's satisfaction that an infraction has occurred, is not unreasonable. This observation is substantially enhanced when applied in the context of a para-military organization such as a police department where discipline is a crucial and independent value. This Court, as any Court, must be concerned whenever a case is brought before it in which the government creates a situation in which the burden is upon an individual to in effect prove his innocence.

2. The Court has specific doubts that Mr. Justice Stewart would reach such a conclusion. See *Roth, supra*, 408 U.S. at 570, n. 7, 92 S.Ct. 2701; Fuentes v. Shevin, 407 U. S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W. T. Grant, 416 U.S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974) (Stewart, J., dissenting).

However, upon examination of the particular facts in this case, the Court finds a post-action hearing consistent with the approach of the Supreme Court majority in *Arnett*. Therefore plaintiff's claim that infringement of this liberty interest without prior hearing is unconstitutional is without merit.[3]

Plaintiff has moved for reconsideration of the Court's finding moot a claim regarding a reprimand all reference to which has now been expunged from his records. By affidavit plaintiff alleges that the existence of the official reprimand on his record prior to its expurgation was the proximate cause of his failure to receive promotional, transfer, and other favorable duty consideration. · If promotion has been denied on the basis of untested allegations then subsequent expurgation of records alone does not moot the issue. Furthermore, such denial of promotion may constitute a substantial infringement of plaintiff's property interest in his employment, analogous to "reduction in rank," and may therefore call for a pre-action hearing on the charge. However, the Court cannot discern the precise facts underlying this claim, and defendants will be given the opportunity to respond with any material they deem appropriate.

Related to the above claim is the issue of the constitutional adequacy of the notice to police personnel of the availability of the grievance procedure discussed in the Court's previous memorandum. The issue was left open at the time of the Court's ruling on the initial motion for summary judgment and remains open now. Its relation to the above claim arises from the fact that an employee cannot bar use of a disciplinary ruling in future promotional consideration by simply refusing to take advantage of administrative review procedures which he knows or reasonably should know to be available. The questions raised here, however, are not ripe for decision.

For the reasons stated above, the issues of the existence of a pre-action hearing in those cases enumerated in the City Charter, the mootness of the previously expunged claim, and the constitutional adequacy of notice of the availability of the grievance procedure hearing remain outstanding. The amended motion for summary judgment will be denied.

---

3. Of course, should it develop that notice of the availability of a subsequent hearing is constitutionally inadequate or that the *prior* hearing for cases of prolonged suspension or dismissal indicated in the City Charter is not in fact available, a different result may be dictated.