Vanessa **MICKLES**, Plaintiff,

v.

**LYNCHBURG TRAINING SCHOOL AND HOSPITAL and Mona Crowe, Defendants.**

**Civ. A. No. 76–0013(L).**

United States District Court, W. D. Virginia, Lynchburg Division.

Aug. 23, 1976.

Charles M. L. Mangum, Lynchburg, Va., for plaintiff.

Diane J. Pioske, Asst. Atty. Gen., Richmond, Va., for defendants.

## OPINION and JUDGMENT

DALTON, District Judge.

This is an action pursuant to Title 42 § 1981 and § 1983 of the United States Code and the Fourteenth Amendment of the Constitution seeking monetary and injunctive relief for the alleged wrongful discharge of Vanessa Mickles a former psychiatric aide trainee at the Lynchburg Training School and Hospital. This case is presently before this court on defendants' motion for summary judgment.

The facts reveal the following series of events. At approximately 1:35 p. m. on October 9, 1975 Ms. Crowe, a Developmental Specialist at the Child Development Center in Lynchburg, observed the plaintiff, a member of the black race, who was sitting among a group of residents with her back to Ms. Crowe, get up and strike a nine-year old resident in the back with her fist. The plaintiff, who then discovered that Ms. Crowe was in the room, immediately stated to Ms. Crowe that she had not hit the child, but had merely pushed her to make her sit down. Nevertheless Ms. Crowe reported the incident to a secretary in the Unit Manager's Office who in turn contacted a doctor and a nurse. Ms. Crowe also contacted the Health Services Coordinator and told the plaintiff that she would be suspended and notified when an investigation date would be set up. The child was examined shortly after the incident by a physician and no lacerations, bruises, or scratches were observed.

The next day, a Board of Investigation appointed by Dr. K. Ray Nelson, the Director of the Lynchburg Training School and Hospital, reported to Dr. Nelson that the charge was confirmed by the eyewitness, Mona Crowe and recommended the plaintiff's separation from state service effective at the time of her suspension. The Board cited the plaintiff as being in violation of Instruction Number 33 as written in the employee's handbook of the Department of Mental Health and Mental Retardation. This instruction, issued by the Commissioner of Mental Health and Retardation on November 20, 1973 admonishes all department personnel that they

"shall at all times conduct themselves toward patients, residents, or clients in such a manner that such persons will be free from every form of physical and mental abuse, harassment, or unnecessary restraint, and from any other acts which are demeaning in nature."

It further requires that

"any person having knowledge of such patient abuse or mistreatment, or having reasonable cause to believe the same is taking place, or has taken place, shall immediately make a report thereof to his supervisor, who in turn shall report the same to the hospital director. Failure to report such incidents of abuse or mistreatment will be cause for disciplinary action." (Defendant's Exhibit H)

On October 15, 1975, by registered mail, the plaintiff was notified of her separation

from state service and of her right to appeal this decision before a three member panel in an evidentiary hearing with counsel present. The plaintiff opted to appeal the decision and was permitted to choose one of the three panel members from a list of prospective members while the Department Commissioner selected a second member and the two members in turn selected a third person.

At the hearing on November 13, 1975 plaintiff was represented by counsel and the panel heard testimony from a number of witnesses, primary of which were plaintiff and Ms. Crowe. Each party repeated her version of the story and plaintiff was permitted to cross-examine all witnesses. Four days later, the panel in reporting its findings stated, "although there was conflicting testimony, there was nothing in the evidence to indicate that Ms. Crowe, the eyewitness to the incident, was other than a credible witness or had any reason to misrepresent the facts." Accordingly the panel agreed with the removal action. This decision and the findings of the panel were affirmed by the Commissioner of Mental Health and Mental Retardation and the State Director of Personnel.

The plaintiff who had been employed at the Lynchburg Training School for four years prior to this incident apparently had a work record that was free of complaints concerning her conduct. She charges that her dismissal was based solely on her race and alleges that she has not received treatment accorded other employees in similar situations.

■ On motion for summary judgment, the question to be resolved by this court is whether any triable issues of fact exist. Should such factual issues exist though, it is not the duty of this court to resolve them at this stage of the proceedings. However when a motion for summary judgment is made and supported with exhibits and affidavits, as is the defendant's motion, the adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts

showing that there is a genuine issue for trial. In this case, the plaintiff has alleged three bases for her federal court jurisdiction.

■ At the outset, this court has no problems in resolving any claim of a violation of procedural due process for the defendants. The plaintiff was put on sufficient notice of the reasons for her suspension and after final discharge accorded a hearing in which counsel was present, evidence from both sides was taken, and cross-examination and final argument permitted. This hearing clearly cured any pre-termination procedural defects that might have existed. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), *Woodson v. Fulton*, 380 F.Supp. 238 (E.D.Va.1974). Moreover in this court's opinion, the hearing satisfied the minimum due process standards to which the plaintiff might have been entitled. *Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567 (4th Cir. 1975). Even if the court found additional procedural pre-termination safeguards warranted they would be fruitless in light of the post-termination safeguards plaintiff received.

■ Plaintiff's constitutional and statutory jurisdictional bases are also premised on a charge of racial discrimination. A review of the record however leads this court to conclude there are no triable issues of fact on which to base such a charge. In plaintiff's memorandum in response to defendants' summary judgment motion she asserts facts pleaded that constitute a prima facie case of racial discrimination. Such facts are allegedly contained in questions propounded by plaintiff's attorney to Ms. Crowe at the plaintiff's administrative hearing concerning other incidents of patient abuse by white aides and in the uncontradicted testimony that plaintiff performed her job competently and with the respect of her superiors.

To the contrary, however, the colloquy between plaintiff's attorney and Ms. Crowe reveals that Ms. Crowe denied allegations by the plaintiff's attorney of unequal treatment of whites and blacks.[1] The only fact to which she admitted that would support plaintiff's claim was that a white aide was not recommended for suspension when the aide was charged with locking residents in a closet. This fact the court finds to be immaterial since it does not constitute an incident of child abuse and is clearly lacking in both the quality or quantity to so base a charge of racial discrimination.

As for the fact that the plaintiff's past work record had been excellent, the court readily accepts this fact, but also considers it insufficient to demonstrate a charge of racial discrimination. The court is well aware that the administrative record reveals that the decision to dismiss the plaintiff was based on the uncorroborated testimony of Ms. Crowe, testimony that was clearly in conflict with that of the plaintiff and the fact of the plaintiff's work record. But the trier of the fact expressly found that Ms. Crowe's story was credible and opted to believe it. This was within the discretion of the Administrative panel and recent trends suggest that this court is not required to retry the evidence. Cf. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The only "facts" which this court can find in the record to support a charge of racial discrimination are the bare face allegations of plaintiff that because she was a member of the black race, her story was not believed and her dismissal ensued. Such allegations, without supporting facts, should not be permitted to subject the defendants to the endless burden of the undue expanse of litigation. *White v. Boyle*, 538 F.2d 1077 (4th Cir. 1976), *Berkelman v. San Francisco Unified School District*, 501 F.2d 1264 (9th Cir. 1974), *English v. North East Board of Education*, 385 F.Supp. 1174 (W.D.Pa.1974).

Nor does it matter that the plaintiff asserts that more evidence will be uncovered in the discovery process and presented at trial in support of plaintiff's claim. *Bosely v. City of Euclid*, 496 F.2d 193 (6th Cir. 1974). Since the defendant has moved for summary judgment and submitted exhibits in support of this motion, plaintiff has the burden of producing material facts sufficient to warrant carrying forward with the case. This court finds that plaintiff has not met this burden and accordingly herein grants summary judgment to the defendant.

This case is to be dismissed from the docket.

1. The administrative transcript reads as follows:

MANGUM: Miss Crowe, have you ever had the occasion to have anyone else suspended because of an incident like this?
CROWE: No, sir.
MANGUM: Have you ever brought in a child abuse against anyone else?
CROWE: No, sir.
MANGUM: Or recommended their suspension or discharge?
CROWE: No, sir.
MANGUM: I believe that you have seen a person smack children while you have been here.
CROWE: Not to my knowledge, no, sir.
MANGUM: Well, you saw Elaine Martin, 3rd shift aide, smack a kid and advise her not to do it again, didn't you?
CROWE: No, sir, not that I can remember.
MANGUM: You don't remember that.
CROWE: No, I don't.
MANGUM: You didn't recommend suspension or discharge of Alberta Primm when you saw her pop a kid with a towel, or Vandergrift. You don't know anything about that?
CROWE: I don't understand the question.
MANGUM: Mrs. Vandergrift saw and reported to you that Alberta Primm popped a kid with a towel. You didn't recommend her suspension or discharge, did you?
CROWE: In that case, it was not reported to me. It was reported to the Unit Manager. It was an incident where evidently there must not have been an eyewitness.
MANGUM: And I believe some representative from MEDICAID came over here and saw this same Primm locking kids in a closet. You did not recommend her discharge or suspension at that time.
CROWE: No, sir.