Robert FAULKNER, Plaintiff,

v.

**NORTH CAROLINA DEPARTMENT OF CORRECTIONS et al., Defendants.**

**No. C–C–77–31.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 16, 1977.

J. LeVonne Chambers and John W. Gresham, Chambers, Stein, Ferguson & Becton, Charlotte, N. C., for plaintiff.

Ben G. Irons, II, Associate Atty. Gen., Dept. of Justice, Raleigh, N. C., for defendants.

PRELIMINARY INJUNCTION

McMILLAN, District Judge.

Robert Faulkner, an employee of the North Carolina Department of Correction, brought this action under 42 U.S.C. § 1983 complaining that his discharge by the de-

fendants deprived him of liberty and property without due process of law and that his suspension and final termination were racially motivated, thus depriving him of equal protection of laws.

A hearing was conducted on February 11, 1977, on plaintiff's motion for a temporary restraining order or in the alternative for an order requiring the defendants to show cause why a preliminary injunction should not be entered. Defendants were duly notified of the hearing; all parties were represented by counsel; and the briefs and oral arguments of all parties have been considered.

Mr. Faulkner was employed by defendant Department of Correction in April, 1974, in the Adult Probation and Parole Division, as a Field Service Counselor in the Pre-Release and Aftercare program. At all times relevant to this action he was a permanent employee within the meaning of the North Carolina Personnel Act, North Carolina General Statutes § 126–1, *et seq.*

On October 5, 1976, plaintiff was called to the office of defendant Patseavouras, the director of the Division of Adult Probation and Parole. This meeting took place on October 6, 1976. There is some dispute as to the exact conversation at the meeting but it is not disputed that Mr. Patseavouras accused plaintiff of holding down a second job in violation of department rules and of using a car for personal purposes.

On October 7, 1976, by letter dated October 6, 1976, Mr. Patseavouras informed Mr. Faulkner that he was suspended effective October 7, 1976, pending an investigation of his dual employment.

By letter dated October 13, 1976, counsel for Mr. Faulkner requested that Mr. Patseavouras send him a copy of the personnel manual applicable to Mr. Faulkner. No response to this request was received.

By letter dated December 15, 1976, counsel for plaintiff requested a response to his October 13th letter and requested a hearing.

By letter dated December 28, 1976, Mr. Patseavouras informed Mr. Faulkner that he had been terminated from employment effective October 6, 1976. The reasons given in the letter for the discharge were that Mr. Faulkner had deliberately misled his supervisor about the extent of his second employment, that the second job was " 'incompatible employment' in violation of State Personnel Regulations," and that Mr. Faulkner had misused state property by using a state car to drive to his second job.

Mr. Faulkner gave timely notice of his intent to appeal this decision and requested a hearing before the Department of Correction's Employee Relations Committee.

By letter dated January 28, 1977, the Manpower Director of the Department of Correction informed the Office of State Personnel that the Department of Correction desired to waive that hearing and requested that a hearing be scheduled with the State Personnel Commission.

No hearing has been scheduled to date.

During the time between Mr. Faulkner's initial suspension and the filing of the complaint in this action, Mr. Patseavouras made several statements to the press about the dismissal. Amongst the comments quoted in the CHARLOTTE NEWS was the statement by Mr. Patseavouras that Mr. Faulkner had not been "completely honest" with his supervisor. He also told the NEWS that a federal investigation was pending to see if federal statutes against defrauding the government had been violated.

At no time prior to his suspension, to his termination, or to Mr. Patseavouras' statements to the press, was Mr. Faulkner afforded a due process hearing. Although the defendants say that they are willing to have a hearing now before the State Personnel Commission, four months have passed since the suspension, and no hearing has been scheduled.

Mr. Faulkner admits holding two jobs but says that he cleared that with his supervisor prior to taking the second job in accordance with Department regulations, and that when his supervisor changed he cleared it with the new supervisor.

Mr. Faulkner also claims that his second job has never interfered with his state job and that his work for defendants was always satisfactory.

No defendant makes any claim that Mr. Faulkner's performance as a Field Service Counselor was less than satisfactory.

North Carolina General Statutes §§ 126–35, 126–36, and 126–37, provide:

"§ 126–35. *Written statement of reason for disciplinary action.*—No permanent employee subject to the State Personnel Act shall be discharged, suspended, or reduced in pay or position, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights. The employee shall be permitted 15 days from the date the statement is delivered to appeal to the head of the department. A copy of the written statement given the employee and the employee's appeal shall be filed by the department with the State Personnel Director within five days of their delivery. However, an employee may be suspended without warning for causes relating to personal conduct detrimental to State service, pending the giving of written reasons, in order to avoid undue disruption of work or to protect the safety of persons or property or for other serious reasons. The employee, if he is not satisfied with the final decision of the head of the department, or if he is unable, within a reasonable period of time, to obtain a final decision by the head of the department, may appeal to the State Personnel Commission. Such appeal shall be filed not later than 30 days after receipt of notice of the department head's decision.

"§ 126–36. *Appeal of unlawful State employment practice.*—Any applicant for State employment or State employee or former State employee who has reason to believe that employment, promotion, training, or transfer was denied him or that demotion, layoff or termination of employment was forced upon him because of his age, sex, race, color, national origin, religion, creed, political affiliation, or physical disability except where specific age, sex or physical requirements constitute a bona fide occupational qualification necessary to proper and efficient administration, shall have the right to appeal directly to the State Personnel Commission.

"§ 126–37. *Personnel Director to investigate, hear and recommend settlement; Personnel Commission to hear or review findings and make binding decision.*—The State Personnel Director or any other person or persons designated by the Commission shall investigate the disciplinary action or alleged discrimination which is appealed to the Commission. The State Personnel Commission may hear the case or direct the State Personnel Director or other person or persons designated by the Commission to conduct a hearing of the facts and issues. If, following the investigation and hearing, a settlement is agreed to by both parties, the State Personnel Director or the designated agent shall certify the settlement to the Commission. If, following the investigation and hearing, there are issues and facts on which agreement cannot be reached, the Personnel Director or the designated agent shall report his findings to the Commission with his recommendations. The Commission at its next meeting, or as soon as possible thereafter, shall consider the report and modify, alter, set aside or affirm said report and certify its findings to the appointing authority which shall be binding. The State Personnel Commission is hereby authorized to reinstate any employee to the position from which he has been removed, to order the employment, promotion, transfer, or salary adjustment of any individual to whom it has been wrongfully denied or to direct other suitable action to correct the abuse which may include the requirement of payment for any loss of salary which has resulted from the improperly discriminatory action of the ap-

pointing authority. The decisions of the State Personnel Commission shall be binding in appeals of local employees subject to this Chapter if the Commission finds that the employee has been subjected to discrimination prohibited by Article 6 of this Chapter or in any case where a binding decision is required by applicable federal standards. However, in all other local employee appeals, the decisions of the State Personnel Commission shall be advisory to the local appointing authority."

Mr. Faulkner has been deprived of both property and liberty. North Carolina General Statutes § 126–35 provides that no permanent employee shall be discharged or suspended except for just cause. This statute creates a reasonable expectation of continued employment and a property interest within the meaning of the due process clause. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). By publicly drawing into question Mr. Faulkner's honesty and by announcing a suspicion of violation of criminal fraud statutes, Mr. Faulkner's ability to find substitute employment has been hampered, thus infringing a constitutionally protected liberty interest. "For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' *Wisconsin v. Constantineau*, 400 U.S. 433, 437 [91 S.Ct. 507, 510, 27 L.Ed.2d 515]." *Board of Regents v. Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. See also *Cox v. Northern Virginia Transportation Commission*, 551 F.2d 555, at pp. 557–558 (4th Cir. 1976).

Defendants, all acting under color of state law, may not constitutionally deprive plaintiff of this liberty and property without affording him due process. It is unnecessary to decide at this point of the case whether the process must be that required by the statute or whether the sufficiency of the process is to be measured by some other standard. Compare opinion of Justice Rehnquist with opinion of Justice Powell in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct.

1633, 40 L.Ed.2d 15 (1974). To date neither the requirements of the statute nor the mandates of the Due Process Clause have been complied with. Written notice of the reasons for suspension were not given as required by North Carolina General Statutes § 126–35. Since Mr. Faulkner's performance for his two years of employment had been satisfactory, there was no necessity to avoid "undue disruption of work," and there is no claim of threat to the safety of persons or property or other serious reason within the meaning of that statute. In contrast, counsel for defendants stated at the hearing that it is routine practice to suspend employees without giving a written statement of reasons. In addition, plaintiff has been afforded a hearing by neither the Director of the Department of Correction nor the State Personnel Committee.

A constitutional violation has been established, and that violation continues every day that goes by without the defendants' affording Mr. Faulkner a hearing. This continuing denial of liberty and property without due process is causing Mr. Faulkner irreparable harm.

The defendants argue that there is no irreparable harm since Mr. Faulkner is still holding his second job which pays a substantial salary and that there is, therefore, no threat of starvation, mortgage foreclosure, or other serious injury to plaintiff.

One does not have to establish a life or death injury to establish irreparable harm. One must simply show that there is an ongoing injury for which there can be no adequate compensation later. In this case there is a serious question whether this court will be able to award plaintiff adequate relief if it determines at a trial on the merits that plaintiff's salary has been wrongfully withheld.

Defendants, in their "Response to Plaintiff's Motion for a Preliminary Injunction," cite *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and say that a federal court may not award back pay to plaintiff since that money will inevitably come from the state treasury. Thus, defendants argue that the Eleventh

Amendment bars the award. In addition, it is not clear that North Carolina General Statutes § 126–37 requires the State Personnel Committee to award back pay if it concludes that the termination was for just cause though procedurally deficient. Without deciding whether or not the Eleventh Amendment ultimately will bar recovery of back pay, there is sufficient likelihood that plaintiff will never be able to recover the wages that he is losing every day to conclude that he is suffering irreparable injury.

Since there is no evidence that plaintiff was doing less than an adequate job before his termination, requiring defendants to reinstate plaintiff pending a hearing will not significantly harm the defendants.

Defendants cite *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), as precluding the granting of preliminary relief in this case. The facts in *Sampson* are significantly different than the facts in this case. Plaintiff in *Sampson* was a discharged employee of the federal government, so there was no possible Eleventh Amendment bar to a later recovery of any wages wrongfully withheld. In addition, there was a clear federal statute that provided for an award of back pay for any time during which an employee was found to have been wrongfully discharged. 5 U.S.C. § 5596; 415 U.S. at 75, 94 S.Ct. 937. In finding that there was no irreparable harm caused by plaintiff's discharge, the Court stressed that any loss of income was ultimately recoverable. Id. at 90, 94 S.Ct. 937. This ultimate recovery is uncertain at best in this case.

In addition, there was no liberty interest infringed in *Sampson*. The only loss of reputation that the plaintiff had suffered was that that inevitably accompanies a dismissal from employment. In this case, Mr. Faulkner's honesty and integrity have been publicly disparaged. An award of money damages at a later date, even if permissible against these defendants, cannot compensate for the continuing loss of reputation.

Finally, plaintiff in *Sampson* was a probationary employee with no property interest and only those procedural rights afforded by federal statute. Thus, a significant question in *Sampson* was whether a preliminary injunction would interfere with the gratuitous procedures established by Congress. Here, the procedure is not gratuitous but constitutionally mandated. There is little reason to bow to the timetable set by defendants who are not even following the procedures set by the North Carolina General Assembly.

Thus, the opinion of the Supreme Court in *Sampson v. Murray, supra,* does not preclude the award of relief in this case. An ongoing deprivation of plaintiff's constitutional rights has been established; it is causing plaintiff irreparable injury; and temporary relief will not harm defendants. Plaintiff is entitled to preliminary relief.

IT IS THEREFORE ORDERED that defendants reinstate plaintiff to the position he held immediately prior to his October 7, 1976, suspension and afford him all benefits and compensation to which an employee holding that position is entitled.

Defendants are given leave to move that this injunction be dissolved after plaintiff has been afforded a due process hearing and an impartial tribunal has reached a decision. Otherwise this injunction will be in effect until there has been a final adjudication of this case on the merits.