Martha Waite

*v.*

Civil Service Commission of West Virginia

(No. 13814)

Decided December 20, 1977.

*E. Dennis White, Jr., and Bernard T. Nibert, II,* for appellant.

*Chauncey H. Browning,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for appellee.

MILLER, JUSTICE:

Appellant, Martha Waite, a classified civil service employee, asks this Court to set aside a decision of the West Virginia Civil Service Commission denying her a hearing before the Commission.[1]

Appellant attacks the decision of the Commission on two grounds: (1) *W.Va. Code,* 29-6-13 [1961], on which the Commission relied, violates the Due Process Clause of both the United States and West Virginia Constitutions; and (2) this section also violates the Equal Protection Clauses of the United States and West Virginia Constitutions.

By letter dated November 6, 1974, appellant, a nurse at the Barboursville State Hospital, was notified that

---

[1] In denying the hearing, the Commission ruled:

"Both the Code and the Rules and Regulations of the Commission permit a hearing upon suspension only in the case of an employee who has been suspended for more than thirty days in any one year. The file of Martha Waite, of which this commission takes judicial notice, reflects only a ten-day suspension during the twelve-month period surrounding her suspension. Attorney for the appellant considers that the appellant has not been suspended in accordance with the requirements of the law, but argues that the equal protection of the laws and the antidiscrimination laws of both the United States and West Virginia constitutions require that the appellant be given a hearing upon her ten-day suspensions [sic]. Although the Commission is in sympathy with the appellant, it is the Commission's opinion that the declaring of the statutes of the State of West Virginia unconstitutional should be left to the Supreme Court of Appeals.

"It is, therefore, the finding of this Commission that under the Rules and Regulations of the Civil Service Commission and the laws of the State of West Virginia that the appellant is not entitled to a hearing before the Commission as she has not been suspended for a period of more than thirty days."

she was being suspended.[2] The period of suspension was from November 13, 1974, through November 22, 1974.

She requested a hearing before the West Virginia Civil Service Commission regarding the suspension in a letter dated November 21, 1974. Proceedings were held on the request, and the Commission found that under West Virginia law appellant was not entitled to a hearing. *See* note 1, *supra.*

*W.Va. Code*, 29-6-13, provides, in pertinent part:[3]

"Any employee in the classified service who is dismissed or demoted after completing his probationary period of service or who is suspended for more than thirty days in any one year, may, within thirty days after such dismissal, demotion or suspension, appeal to the Commission for review thereof."

Article XI, Section 3 of the Rules and Regulations of the West Virginia Civil Service System provides:

"The Appointing Authority may, upon notice confirmed in writing or by written notice, suspend any employee without pay for deliquency or misconduct, for a period not to exceed thirty calendar days in any one calendar year. The employee shall only have recourse to appeal if sus-

---

[2] This letter charged, in pertinent part:
"1. Took annual leave without authority of the Appointing Authority or upon the authority delegated to the Director of Nursing Service. All vacation time must be requested and authorized on a form designated by the Appointing Authority.
"2. Failure to comply with memorandum dated July 11, 1974, from the Director of Nursing which specifically states: 'Never fill prescriptions from floor stock.' On October 2, 1974, you ignored the above policy and removed the drugs from Ward 4, A and B, to take on a camping trip when they should have been filled in the Pharmacy per instructions.
"3. The camping trip scheduled for October 2, 3, and 4, 1974, was terminated on October 3, 1974, and you should have reported to the Director of Nurses on October 4, 1974, for another assignment. No one knew of your whereabouts and you failed to let anyone know. You were absent without authorization."

[3] This same language is currently found in *W.Va. Code*, 29-6-15 [1977].

pended for more than thirty days in any one year."

Article XII, Section 4-1 of the Rules and Regulations reads:

"A permanent employee who is dismissed, suspended for more than thirty days or demoted shall have the right to appeal to the Commission not later than thirty days after the effective date of the dismissal, suspension, or demotion. ...."

I. *Appellant's rights under statutory law*

We first note that *W.Va. Code*, 29-6-13, clearly anticipates and provides for the suspension of any permanent employee prior to a hearing. Under the Rules and Regulations of the Civil Service System, no employee may be suspended for more than thirty days in any one calendar year. Any employee who is suspended must be notified in writing. The employee may be suspended without pay only for deliquency or misconduct. Finally, under both *W.Va. Code*, 29-6-13, and Article XII, Section 4-1 of the Rules, only if employees are suspended for more than thirty days in any one year are they entitled to a post-suspension hearing. Nothing in either the statute or the Rules and Regulations requires that an employee who is suspended for thirty days or less be given any kind of hearing. Under these provisions, such employees are entitled to nothing more than written notice of suspension.

II. *Appellant's constitutional claim to due process*

In *North v. Board of Regents*, W. Va., 233 S.E.2d 411 (1977), we treated at some length the procedural safeguards required under Article III, Section 10 of the West Virginia Constitution. We discussed the concept of "liberty" and "property" interests triggering due process requirements when affected by State action. *North* also demonstrated that in analyzing our State's constitutional due process standard, we are free to consider the applicable federal constitutional standards. Ultimately, however, we must be guided by our own principles in establishing our State standards, recognizing that so

long as we do not fall short of the federal standard our determination is final.[4]

To evaluate appellant's constitutional claim we employ a two-step analysis. *Cf. Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); *Perry v. Sindermann*, 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). Initially, we determine whether appellant's interest rises to the level of a "liberty" or "property' interest. If the answer is no, the second step becomes unnecessary because appellant has no claim warranting constitutional protection. If, however, either a liberty or property interest is at stake, then we must weigh the competing interest of the appellant and the State agency to determine what procedural due process is constitutionally required. We turn first to determine whether appellant's claim involved an interest in liberty. Thereafter, we will consider whether a property interest is involved.

## A. *Appellant's liberty interest claim*

The concept of a "liberty" interest is grounded in the Due Process Clause of both our State and Federal Constitutions, which prohibit the deprivation of "... life, liberty or property, without due process of law." United States Constitution, Amendment V; West Virginia Constitution, Article III, Section 10.

The liberty interest concept developed in *Board of Regents v. Roth, supra*, is the interest an individual has in being free to move about, live and work at his chosen vocation without the burden of an unjustified label of infamy. *Roth, supra*, 408 U.S. at 572, 33 L. Ed. 2d at 558, 92 S. Ct. at 2707. A liberty interest is implicated when the state makes a "charge against him that might seriously damage his standing and associations in his community." *Id.* at 573, 33 L. Ed. 2d at 558, 92 S. Ct. at 2707. The *Roth* Court stated that a charge of dishonesty or

---

[4] *See Oregon v. Hass*, 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975).

immorality would implicate an individual's liberty interests.

We follow these principles and find that an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence, is likely to have severe repercussions outside his work world, infringes one's liberty interest. Moreover, an individual has an interest in avoiding "a stigma or other disability" that forecloses future employment opportunities. *See Roth, supra,* 408 U.S. at 574, 33 L. Ed. 2d at 559, 92 S. Ct. at 2707. *See also Codd v. Velger,* 51 L. Ed. 2d 92, 100, 103 at nn. 3 & 11 (1977) (Stevens, J., dissenting); *Goss v. Lopez,* 419 U.S. 565, 574-575, 42 L. Ed. 2d 725, 735-736, 95 S. Ct. 729, 736-737 (1975).

In the present case, appellant's suspension was based on several infractions of hospital policy. We do not deem these charges reach the level of stigmitization which would foreclose future employment opportunities or seriously damage appellant's standing and associations in the community.[5] We, therefore, conclude that appellant has not suffered damage to her liberty interest.

B. *Appellant's property interests in uninterrupted employment*

Appellant alleges that her suspension by the hospital superintendent violated procedural due process because she was deprived of property without "a right to a hearing and an opportunity to present evidence or otherwise contest the reasons given for such a suspension."

It is clear from the Supreme Court decision in *Roth, supra,* that the Constitution protects property interests

---

[5] We adopt the view that the truth or falsity of the charge does not enhance or diminish the impairment of the liberty interest. It is the nature of the charge that determines the scope of procedure required where the "liberty" interest is involved. The one purpose of the procedural safeguard is to provide a mechanism to establish the truth or falsity of the charge. *Bishop v. Wood,* 426 U.S. 341, 349, 48 L. Ed. 2d 684, 692, 92 S. Ct. 2074, 2080 (1976); *Codd v. Velger,* 51 L. Ed. 2d 92, 100 (Stevens, J., dissenting).

beyond the traditional concept of real or personal property. The Court indicated that a benefit which merits protection as a property interest must be one to which there is more than a "unilateral expectation." 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709. Rather, there must exist rules or understandings which allow the claimant's expectations to be characterized as "a legitimate claim of entitlement to [the benefit]." *Ibid.*

Appellant contends that her interest in continued uninterrupted employment meets the standards set out in *Roth.* However, the situation here is not akin to that of the teacher in *Roth* who argued that a hearing was necessary before the University could refuse to rehire him. Here, no question arises as to the right of appellant to her position. Appellant was suspended for ten days, after which she resumed her position. Thus, the question is whether appellant has a legitimate claim of entitlement to remain on her job and earn a salary, part of which was denied her by virtue of the suspension.

Although there is no direct pronouncement by this Court concerning a public employee's claim of entitlement to continued uninterrupted employment, a property interest clearly can be found in appellant's acknowledged status as a permanent employee entitled to "security of tenure." *State ex rel. Karnes v. Dadisman,* 153 W. Va. 771, 781, 172 S.E.2d 561, 568 (1970).[6]

---

[6] Other courts which have stated that a public employee has a sufficient claim of entitlement to continued employment warranting due process procedures surrounding a suspension include: *Goss v. Lopez,* 419 U.S. 565, 573, 42 L. Ed. 2d 725, 734, 95 S.Ct. 729, 735 (1975); *Muscare v. Quinn,* 520 F.2d 1212, 1215 (7th Cir. 1975), cert. dismissed as improvidently granted, 425 U.S. 560 (1976); *Faulkner v. North Carolina Department of Corrections,* 428 F.Supp. 100, 103 (W.D. N.C. 1977); *Aiello v. City of Wilmington Delaware,* 426 F.Supp. 1272, 1286 (D. Del. 1976); *Keane v. Berry,* 416 F.Supp. 858, 859 (D. Ariz. 1976); *McIntyre v. New York City Department of Correction,* 411 F.Supp. 1257, 1259 (D.C. N.Y. 1976); *Puckett v. Mobile City Commission,* 380 F.Supp. 593, 599 (S.D. Ala. 1974); *Woodson v. Fulton,* 380 F.Supp. 238, 240-41 (E.D. Va. 1974). *But see Anderson v. Minter,* 291 N.E.2d 457 (Ohio 1977); *Nason v. New Hampshire Personnel Commission,* 370 A.2d 634 (N.H. 1977).

It should be emphasized that the finding of a "property" interest on behalf of a permanent or covered civil service employee does not mean that such employee can never be suspended from employment. The consequence is that the suspension must be accomplished under appropriate due process procedures.

Having found that appellant's interest in uninterrupted employment to be a "property" interest, we must consider whether a ten-day suspension is so minimal that due process protection need not be afforded. The *de minimis* concept was specifically discussed in *Goss v. Lopez, supra*, and the Court held that a ten-day suspension from school was not such a minimal deprivation that no due process procedure need be afforded. In *North v. Board of Regents, supra*, we adopted the *Goss* rule in interpreting our State's Due Process Clause. There, we concluded, as did *Goss*, that the extent of the deprivation would be a relevant consideration in determining the extent of the due process procedures afforded.

We conclude that a ten-day suspension is not so minimal a deprivation of appellant's property interest in continued uninterrupted employment to require no due process procedural protection.

### III. *The extent of due process protection*

Again in *North, supra*, we summarized some broad principles relating to the scope of due process procedures that would be made available in given cases:

> "First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation."

Further refinement of these principles was not necessary to the resolution of *North* because of the serious

deprivation that had occurred. Here, we have a temporary deprivation and a more selective test is appropriate.

In *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), the United States Supreme Court has enunciated some of the factors which should be considered in determining the process which is appropriate to protect a property interest. The Court held that such a determination:

> ". . . generally requires consideration of three distinct factors; first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of [a property] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903."

We consider these factors to be germane to a selection of an appropriate procedure under our Due Process Clause. Applying the first factor, we find that the appellant suffered tangible economic loss when suspended without pay. Moreover, under the statutory scheme appellant could be deprived of one-twelfth of her annual income before any statutory relief is possible.

Utilizing the second factor which relates to the risk of an erroneous deprivation, there are presently no statutory procedures designed to protect against an erroneous suspension of under thirty days. Consequently, any procedural safeguards will diminish this risk of error.

Finally, and of no small consideration, is the State's interest, including the additional burden that would be added by imposing some due process procedures.

Like any State agency, the hospital has a strong interest in being able to deal quickly and inexpensively with

routine personnel matters in order to promote efficiency and economy in administration. Moreover, because appellant is a registered nurse, the hospital's interest is more particularized than in the ordinary case. As a State mental hospital, the employer has special interests in ensuring that enough staff nurses be available for patient care.

The hospital's interest is unusual in another respect. A hospital staff is highly interdependent, both in the sense that a physician needs the skills and presence of a nurse and in the sense that the collegial nature of the staff requires the presence of the nurse for effective performance. Obviously if a nurse is absent without authorization, the hospital is required to find a replacement to perform those tasks. There can be no doubt that the State's interest is not inconsequential and it should not be required to afford extensive procedural protection on short suspensions.

In *Goss, supra,* the Supreme Court held that due process requires, in connection with a suspension of ten days or less, that a student be given written or oral notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his version. Moreover, the Court stated that generally notice and hearing should precede the student's removal from school, since the hearing may almost immediately follow the misconduct. If prior notice and hearing are not feasible, as where the student's presence endangers persons or property or threatens disruption of the academic process, thus justifying immediate removal from school, the necessary notice and hearing should follow as soon as practicable. We expressly sanctioned this approach in *North.* 233 S.E.2d at 417.

We are of the opinion that due process requires that similar procedures must be afforded a State classified civil service employee who is suspended for thirty days or less on charges amounting to misconduct or delinquency. Appellant's property interest is important

enough that she should have not only notice of the charges against her, but also an opportunity to present her side of the story to the decision-maker. Allowing appellant to give her side of the story will ensure that all relevant facts are before the decision-maker before the decision to suspend is made. Moreover, the employee should be accorded the right to reply in writing if she so desires.[7]

There is no substantial burden that will be placed upon the State agency by requiring such procedure. In fact, a similar statutory procedure exists for those who are given a discharge or reduction in rank, under *W.Va. Code*, 29-6-8 (11) [1961]. Before such action can be taken, they must be presented "... with the reasons for such discharge or reduction stated in writing, and have been allowed a reasonable time to reply thereto in writing or upon request to appear personally and reply to the head of the department or his deputy. The statement of rea-

---

[7] We have considered several alternate solutions taken by other courts. The most extreme is that evidenced by *Muscare v. Quinn*, 520 F.2d 1212 (7th Cir. 1975), cert. dismissed as improvidently awarded, 425 U.S. 560 (1976), where the court held the civil service procedures unconstitutional which provided for no hearing for suspension under thirty days.

In *Umholtz v. City of Tulsa*, 565 P.2d 15 (Okla. 1977), the court held that the police department had the power to suspend two police officers without first affording them notice or hearing and that such action did not violate the officers' rights to due process under the Fourteenth Amendment of the U.S Constitution. However, the court also held that the Due Process Clause of the Oklahoma Constitution afforded minimal protection of the officers' limited property right in continued employment and that this required an adequate written, reasoned explanation for the actions taken, which would be reviewable by a court.

This is esssentially the approach offered by Professor Rabin, who views the protections afforded by due process as increasing or decreasing by the importance of the right protected. *See* Rabin, Robert L., *Job Security and Due Process; Monitoring Administrative Discretion Through a Reason Requirement*, 44 U. Chi. L. Rev. 60 (1976). The difficulty with this approach is that it contains no provision for correcting an erroneous deprivation by permitting the affected employee to make a response prior to suspension.

sons and the reply shall be filed as a public record with the director."[8]

In fashioning any procedural remedies arising out of our due process standards, we have utilized the doctrine of least obtrusive remedy to "... avoid striking down legislation whenever '... there is an adequate remedy to prevent such legislation from being unconstitutionally applied.' Point 4, Syllabus, *State ex rel. Alsop v. McCartney*, W. Va., 228 S.E. 2d 278 (1976)." *State ex rel. Harris v. Calendine*, W. Va., 233 S.E.2d 318, 323 (1977).

Therefore, under the doctrine of least obtrusive remedy, we decline to declare *W.Va. Code*, 29-6-13, unconstitutional, since we conclude that the appellant is not entitled to an appeal to the Civil Service Commission from a suspension of less than thirty days. Her due process rights are as described above, and since she has been restored to her position, there is no further relief which can be accorded.

### IV. *Appellant's equal protection claim*

Appellant also advances an equal protection argument on the basis that *W.Va. Code*, 29-6-13 [1961] establishes unequal classifications. Those civil service employees who are suspended for thirty days or less are excluded from a review hearing, while those receiving more than a thirty-day suspension are entitled to such hearing. We find no merit in this argument.

In *State ex rel. Piccirillo v. Follansbee*, W. Va, 233 S.E.2d 419 (1977), we discussed at some length the concept of equal protection. We adopted and applied the standard that unless the State action violates certain sensitive and fundamental rights and constitutional freedoms, such as religion or speech, then the chal-

---

[8] As noted in *Goss* and *North*, in extraordinary situations where there is a continuing danger to persons or property or to the orderly conduct of the affairs of the agency, immediate suspension may be warranted. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable.

lenged classification will be analyzed to see if it bears some rational relationship to legitimate State purposes.

The right that is here involved is a property right in continued uninterrupted employment. It is not a sensitive and fundamental right or constitutional freedom. Therefore, we need only determine whether this classification bears some rational relationship to legitimate State purposes.

In the early portion of this opinion we discussed at some length the State's interest "in being able to deal quickly and inexpensively with routine personnel matters in order to promote efficiency and economy in administration." We consider such interest to be a legitimate State purpose and certainly disciplinary procedures permitting a distinction between minor disciplinary punishments and major ones are rationally related to this interest. We, therefore, hold that W.Va. *Code*, 29-6-13 (1961) does not violate our Equal Protection Clause. West Virginia Constitution, Article III, Section 17. *See Cimino v. Board of Education of County of Marion*, W. Va., 210 S.E.2d 485 (1974).

For the reasons stated above, the appeal is dismissed.

*Appeal dismissed.*

NEELY, JUSTICE, *Concurring:*

I concur in the dismissal of the appeal in this case, but respectfully disagree with the majority's extension of certain procedural safeguards to classified civil service employees who are suspended for thirty or fewer days on charges amounting to misconduct or delinquency. The requirement that employees be notified before their suspension of the charges against them and be given the opportunity, except in situations where there is a continuing danger to persons or property or to the orderly conduct of the agency's affairs, to respond to the employing authority in my view unreasonably fetters agency discretion in personnel matters, creates one more procedural trap for the unwary, and creates a need for

courts to develop standards and to examine agency compliance with essentially technical matters of form. I do not see the point of imposing these burdens on agencies and wasting scarce judicial resources, when in the end all an aggrieved employee gets is the right to speak; the decision-maker need do no more than give the appearance of listening.

In the absence of statutory authority to the contrary, I cannot join in the majority's declaration of procedural rights in this context. This is obviously a case which requires the striking of a balance between the employee's constitutional rights and the right of the government to govern efficiently. Frequently procedures achieve nothing but the guarantee that the taxpayers will pay and pay and pay for State employees who do not work. Procedural safeguards in the case of the temporary suspension will not achieve a more just result for the employer but may well do a disservice to the State.