408 S.E.2d 286

**WEST VIRGINIA UNIVERSITY,**
**Petitioner Below, Appellant,**

v.

**Ann Collins SAUVAGEOT and the West Virginia State and Education Employees Grievance Board Respondent Below, Appellee.**

**No. 19686.**

Supreme Court of Appeals of
West Virginia.

Submitted May 15, 1991.

Decided July 11, 1991.

Rehearing Denied Sept. 5, 1991.

Filed as modified Sept. 5, 1991.

---

Larry Harless, Charleston, for appellee.

PER CURIAM:

This is an appeal by West Virginia University from an order of the Circuit Court of Kanawha County entered on July 28, 1989. That order affirmed a decision of the West Virginia State and Education Employees Grievance Board directing the appellant, West Virginia University, to reinstate Ann Collins Sauvageot to full employment with a program conducted by the University and to pay her lost wages. On appeal, the University claims that, given the facts of the case, the Grievance Board and the Circuit Court of Kanawha County erred in concluding that Ms. Sauvageot was entitled to reinstatement and back pay. After reviewing the record, this Court believes that the trial court correctly concluded that Ms. Sauvageot was entitled to reinstatement. The Court, however, does not believe that she is entitled to back pay. The judgment of the Circuit Court of Kanawha County is, therefore, affirmed insofar as it relates to Ms. Sauvageot's entitlement to reemployment and reversed insofar as it relates to her entitlement to back pay.

In 1986, the appellant, West Virginia University, entered into a one-year contract with Ann Collins Sauvageot which appointed her to a position in a program called the University Affiliated Center for Developmental Disabilities. The program was funded solely through grants and contracts from the Federal and State governments and was staffed solely with temporary employees who, according to the University, were hired on one-year contracts with no expectation of continued employment. The contract with Ms. Sauvageot specifically provided that the employment period was from July 1, 1986, to June 30, 1987, and that the position was funded solely through a contract with the West Virginia Department of Human Services.

Ms. Sauvageot had worked with University-affiliated organizations since September 1, 1973. Specifically, from September 1, 1973, until July 1, 1976, she had worked with the University's Research and Training Center, and from July 1, 1976, until she entered into the 1986 contract she had worked for the University Affiliated Center for Developmental Disability. Each year during her approximately thirteen-year employment with University-affiliated programs, she had entered into one-year contracts similar to the one that she entered into in 1986. At various times the funding for her employment had shifted, but the employer, by shifting Ms. Sauvageot's job position or by altering her responsibilities or compensation slightly, had always managed to retain her as an employee.

On June 4, 1987, before the expiration of Ms. Sauvageot's 1986 contract, the West Virginia Department of Human Services indicated that funding for Ms. Sauvageot's position would be eliminated in the ensuing fiscal year. The director of the program, upon learning of the decision to discontinue

funding, notified Ms. Sauvageot that her position would be eliminated after June 30, 1987.

Ms. Sauvageot, who was aggrieved by the fact that her contract would not be renewed, filed a grievance pursuant to the provisions of *W.Va.Code*, 18–29–1 *et seq.* At the lower levels of the grievance procedure, her grievance was denied. A Level IV hearing was conducted on May 9, 1988, however, and following that hearing, on August 16, 1988, a hearing examiner issued a decision which granted Ms. Sauvageot's grievance and ordered the University to reinstate her to full employment and to pay her lost wages.

In reaching the conclusion that Ms. Sauvageot should be reinstated, the hearing examiner concluded that because the University Affiliated Center for Developmental Disabilities had lost one staff position, the loss of the position could be accurately characterized as a program reduction. The examiner concluded that such program reductions are governed by the University's "Policies and Procedures for Program Change." Those policies and procedures provided that to the greatest extent possible, employees with the greatest seniority would be retained when a program was reduced. The hearing examiner found that Ms. Sauvageot was the most senior faculty member assigned to the program and that the University, in failing to renew her annual appointment, acted contrary to the policy.

The University appealed to the Circuit Court of Kanawha County, and by order dated July 28, 1989, the circuit court affirmed the hearing examiner's decision. The circuit court found that Ms. Sauvageot had worked for the University Affiliated Center for Developmental Disabilities since July, 1976, and that the appellant was the most senior employee in the program. Given this circumstance and the fact that the University had a policy favoring the retention of senior employees, the court concluded that Ms. Sauvageot was entitled to the relief which she sought. The circuit judge also suggested that he had considered the question of whether the University's ac-

tions were arbitrary and capricious and violative of Ms. Sauvageot's property interests.

In the present appeal, the University argues that the hearing examiner and the circuit court erred in ordering Ms. Sauvageot's reinstatement and the payment of back wages.

In prosecuting its appeal, the University focuses on the fact that the circuit court made references to its policies and procedures in granting Ms. Sauvageot relief. The University points out that the "Policies and Procedures for Program Change" apply only when there is a significant program change. The "policies and procedures for program change" defines a significant program change as:

Any modification, reorganization, or adjustment of a program which involves the anticipated release of a tenured faculty member or anticipated release of a non-tenured faculty or staff member during the term of appointment.

The University argues that Ms. Sauvageot was neither a tenured faculty member nor a non-tenured faculty or staff person who was released during the term of her appointment and that thus, that the nonrenewal of her contract did not constitute a program change.

While this Court believes that the University's policies and procedures, which reflect the University's attitudes toward senior employees, and which apparently help define the atmosphere in which employment decisions are made, are relevant to the broad question of whether Ms. Sauvageot was properly discharged, the Court does not believe that those policies and procedures are dispositive of the question of Ms. Sauvageot's entitlement to employment.

In *State ex rel. McLendon v. Morton*, 162 W.Va. 431, 249 S.E.2d 919 (1978), this Court discussed the interests of college professional personnel in their employment. In that case, the Court concluded that where an employee has a "property interest" in employment, the employee was entitled to procedural due process protection when existing rights were affected by gov-

ernmental action. In reaching that conclusion, the Court, in part, relied upon a body of federal law developed in such cases as *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

In *McLendon,* the Court reiterated a view expressed in both *Board of Regents v. Roth, supra,* and the West Virginia case of *Waite v. Civil Service Commission,* 161 W.Va. 154, 241 S.E.2d 164 (1977), that for a protected "property interest" to arise, there must be rules, understandings, or relationships between the employee and the institution which give rise to a legitimate claim of entitlement. What constitutes a protected "property interest" is defined in syllabus point 3 of *Waite v. Civil Service Commissioner, Id.,* as follows:

> A "property interest" includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings.

The Court has also indicated that unilateral, subjective expectations on the part of an employee developed apart from any action, undertaking, or position of the employer are not sufficient to give rise to a protected property interest. There must be some undertaking by the employer which gives rise to an objective expectation on the part of the employee. *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983); *see also Logan County Education Association v. Logan County Board of Education,* 180 W.Va. 326, 376 S.E.2d 340 (1988).

■ Such undertaking, however, does not have to be in writing; it may evolve in a *de facto* fashion. *State ex rel. McLendon v. Morton, supra; Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In the *McLendon* case, the employee, Professor McLendon, had taught for six years in an institution which had policies that provided that an employee with six years of tenure should be notified of any nonretention decision by timely notice. Professor McLendon was not treated in accordance with the policies, and this Court concluded that, because of her long tenure, she was entitled to the safeguards which the policies established. The Court, in reaching that conclusion, noted that in *Beverly Grill, Inc. v. Crow,* 133 W.Va. 214, 57 S.E.2d 244 (1949), and *Hoffman v. Town of Clendenin,* 92 W.Va. 618, 115 S.E. 583 (1923), there was a recognition that arbitrary and capricious behavior on the part of a public employer is synonymous with a lack of procedural due process, and the Court, in effect, ruled that where an employee has obtained a property interest in employment with a public employer, he is entitled to nonarbitrary and noncapricious treatment by that employer.

■ The record in the present case indicates that although Ms. Sauvageot was hired under a contract which provided for one year employment only, and which clearly was contingent upon specific grant funding, Ms. Sauvageot had been hired under such contracts for many years. She had worked for the University's Affiliated Center for Developmental Disabilities from July 1, 1976, until 1987, and prior to that time she had worked with the University's Research and Training Center from September 1, 1973, until July 1, 1976. At the time she was notified in 1987 that her employment would not be renewed, she had been continuously employed by the University for almost fourteen years. Although her employment over this entire period had been categorized as temporary, nontenured, and dependent upon sufficient grant monies, and although all her appointments had been for one-year terms, Ms. Sauvageot had always been offered a new contract, even though at times grants had been terminated and the offering of new employment had required a shift in her employment position.

In addition to the long-term procedure of the University in reappointing Ms. Sauvageot, at the time she was notified that her contract would not be renewed the Univer-

sity had in effect a program change policy which provided:

> To the greatest extent possible, program reduction will be accomplished without loss of employment. It is not the intent of the University to displace individuals who have served the institution ... When programs are reduced staff with the most seniority will be retained ... To the greatest extent possible, full-time untenured faculty will be retained ... Recognizing its moral and legal obligations, the University seeks to assure that its faculty will represent all races and both genders ... Therefore, the University will extend itself in every possible way to protect women and minorities affected by program change.

In this Court's view, a fair reading of the record in this case suggests that because of the University's long-term and repeated practice of reappointing Ms. Sauvageot as her annual contracts expired, she had a reasonable objective expectation that her employment would continue. Further, the Court believes that this expectation was not of a subjective nature and did not arise from unilateral circumstances, but its development was encouraged and assisted by the University's long-term pattern of reemploying her as well as an apparent attitude on the part of the administration to protect the employment of long-term, nontenured employees, an attitude which was formally expressed in the University's policy.

Under the circumstances, this Court believes that Ms. Sauvageot had a sufficient property interest to be entitled to the protections and treatment discussed in *State ex rel. McLendon v. Morton, supra,* and *Waite v. Civil Service Commission, supra.*

As previously indicated, where an employee has such a property interest, the employee is entitled to nonarbitrary and noncapricious treatment by the public institution. In the present case, this Court believes that nonarbitrary and noncapricious treatment must translate into treatment of the same kind and same nature that was accorded to Ms. Sauvageot in the past unless there is some valid and objec-

tive reason advanced for denying Ms. Sauvageot such treatment.

While this Court believes that the treatment previously afforded Ms. Sauvageot, and the accommodations previously made to her in re-employing her upon the expiration of previous contracts, define and, in effect, separate noncapricious and nonarbitrary treatment from arbitrary and capricious treatment, this Court does not believe that the University is required to grant Ms. Sauvageot additional consideration, including displacing other personnel, in order to give her further employment.

■ In the present case, although the Court believes that the University failed to make appropriate accommodation to afford the appellant renewed employment, the Court does not believe that the University's action was of such a character as to support an award of back pay. In concluding that the appellant is not entitled to back pay, we stress the peculiar circumstances of this case. The funding for Ms. Sauvageot's position originated solely from grant or contract monies. Her contract was not renewed because of the unavailability of grant or contract money. Unlike the ordinary case, this unavailability eliminated any pool of money from which an award of back pay could be made. Moreover, it is extremely doubtful that the University would be able to secure future grant or contract money to satisfy an award of back pay.

For the reasons stated, the judgment of the Circuit Court of Kanawha County, insofar as it relates to Ms. Sauvageot's entitlement to reinstatement, is affirmed. Insofar as that judgment relates to back pay, it is reversed and set aside.

Affirmed in part and reversed and set aside in part.

BROTHERTON, J., dissents.