437 S.E.2d 775

**Gene Hal WILLIAMS, Plaintiff,**

v.

**Charles G. BROWN, Attorney General of West Virginia, Defendant.**

**No. 21816.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Nov. 23, 1993.

Louis S. George, Huntington, for plaintiff.

David P. Cleek, Kenneth E. Knopf, Cleek, Pullin, Knopf & Fowler, Charleston, for defendant.

**204**

MILLER, Justice:

This case involves three questions certified to us by the Circuit Court of Kanawha County pursuant to W.Va.Code, 58–5–2 (1967). We are asked to decide the following issues: (1)· whether assistant attorneys general are at-will employees; (2) whether legislative enactments providing public employees with fringe benefits constitute an offer of continued employment that, when accepted, prohibit the Attorney General from firing assistant attorneys general except for cause; and (3) whether there is a duty of good faith and fair dealing in a public employment relationship that precludes the termination of the employment of an assistant attorney general except for cause.[1] We find that assistant attorneys general are at-will employees whose employment status is not altered by their receipt of certain legislative benefits. Moreover, because we find assistant attorneys general to be at-will employees, we hold that the Attorney General does not have a duty of good faith and fair dealing in exercising his authority to terminate them.

## I.

The plaintiff, Gene Hal Williams, was employed by the State of West Virginia from June, 1957, through January, 1985. On January 16, 1985, he was fired from his job as an assistant attorney general by the newly elected Attorney General, the defendant Charles G. Brown. No reason was given for the termination.

Subsequently, the plaintiff filed suit against the Attorney General. The plaintiff alleged, among other things, that he had been discriminated against because of his age in violation of the West Virginia Human Rights Act, W.Va.Code, 5–11–1 et seq.;[2] his firing breached an implied employment contract; and, the State had violated its duty of good faith and fair dealing.

Following discovery, the defendant moved for summary judgment. This motion was denied. The defendant then asked the circuit court to certify the aforementioned issues to this Court.[3] In answering the certified questions, the circuit court found that assistant attorneys general are at-will employees and may be discharged without cause, the employee-related benefits given to them does not alter their at-will status, and there is a duty of good faith and fair dealing in public employment. The circuit court then certified its rulings in ·its order of February 11, 1993.

## II.

W.Va.Code, 5–3–3 (1961), states, in relevant part: "The attorney general may appoint such assistant attorneys general as may be necessary to properly perform the duties of his office.... *All assistant attorneys general so appointed shall serve at the pleasure of the attorney general and shall perform such duties as he may require of them.*"[4] (Emphasis added). The plaintiff

---

1. See note 3, *infra,* for the entire text of the three certified questions.

2. This issue is not before us.

3. The entire text of the certified questions is:
   "(1) Whether the provisions of *West Virginia Code,* § 5–3–3 make assistant attorneys general and deputy attorneys general at-will employees who may be discharged for no reason or any reason?
   "(2) Whether the acts of the Legislature in extending employee benefits, such as vacation, retirement and health insurance benefits, constitute an offer of continued employment which may be accepted by a public employee who can thereafter be discharged only for cause, despite the lack of civil service coverage and despite the will-and-pleasure status of assistant attorneys general under *West Virginia Code* § 5–3–3?

   "(3) Whether there is a duty of good faith and fair dealing in a public employment relationship?"

4. The full text of W.Va.Code, 5–3–3, is:

   "The attorney general may appoint such assistant attorneys general as may be necessary to properly perform the duties of his office. The total compensation of all such assistants shall be within the limits of the amounts appropriated by the Legislature for personal services. All assistant attorneys general so appointed shall serve at the pleasure of the attorney general and shall perform such duties as he may require of them."

   "All laws or parts of laws inconsistent with the provisions hereof are hereby amended to be in harmony with the provisions of this section."

argues that even though W.Va.Code, 5–3–3, states that assistant attorneys general serve "at the pleasure" of the Attorney General, they are not "at-will" employees who may be fired by the Attorney General for any reason or no reason.

■ When asked to interpret a statute, we must first decide whether any inquiry beyond the statute's own language is necessary. We explained this principle in Syllabus Point 1 of *West Virginia Radiologic Technology Board of Examiners v. Darby*, 189 W.Va. 52, 427 S.E.2d 486 (1993):

"' "When a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute." Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.*, 148 W.Va. 369 [135 S.E.2d 262 (1964)].' Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield*, 153 W.Va. 210, 168 S.E.2d 525 (1969)."

■ The use of the phrase "serve at the pleasure of the attorney general" in W.Va. Code, 5–3–3, indicates the intent of the Legislature to give the Attorney General unfettered control over the hiring and firing of assistant attorneys general. We dealt with an at-pleasure appointment in *Barbor v. County Court*, 85 W.Va. 359, 101 S.E. 721 (1920), where the manager of the county poor farm was fired by the county court. The manager claimed that he had a three-year contract of employment and that his termination violated the contract. Initially, we examined the provisions of section 23, ch. 46, Code 1918 which states:

" 'Every officer or other person appointed or employed by the county court under

the provisions of this chapter, shall hold his office or appointment at *its pleasure,* and receive for his services such compensation as it may deem reasonable.' " 85 W.Va. at 361, 101 S.E. at 722. (Emphasis added).

After discussing several of our earlier cases, we established this principle in Syllabus Point 4 of *Barbor:*

"Where a statute conferring the power to appoint fixes no definite term of office, but provides that the tenure shall be at the pleasure of the appointing body, the implied power to remove such appointee may be exercised at its discretion, and cannot be contracted away so as to bind the appointing body to retain him in such position for a definite, fixed period."

*See also Fayette County Court v. Roach*, 112 W.Va. 111, 163 S.E. 811 (1932).

■ W.Va.Code, 6–6–8 (1931),[5] is the current counterpart to the Code section relied upon in *Barbor.* We discussed this statute in *Christopher v. City of Fairmont*, 167 W.Va. 710, 280 S.E.2d 284 (1981), and concluded that W.Va.Code, 6–6–8, did not apply to an employee who was covered under a civil service system.[6] A person covered under a civil service system is afforded certain statutory protections surrounding his employment and is, therefore, not an at-will employee. We discussed the status of a civil service employee in *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), and stated in Syllabus Point 4: "A State civil service classified employee has a property interest arising out of the statutory entitlement to continued uninterrupted employment." There is no question, however, that assistant attorneys general are not covered by the State civil service system.

In *State ex rel. Archer v. County Court*, 150 W.Va. 260, 144 S.E.2d 791 (1965), we found that an at-will removal power is im-

---

5. W.Va.Code, 6–6–8, states:

"The court, body or officer authorized by law to appoint any person to any county, magisterial district, independent school district, or municipal office, the term or tenure of which is not fixed by law, may remove any person appointed to any office by such court, board, body or officer, with or without cause, whenev-

er such removal shall be deemed by it, them or him for the good of the public service, and the removal of any such person from office shall be final."

6. The employee in *Christopher* was protected by the Merit System Personnel Rules and Regulations of the City of Fairmont.

plied when the employer has the power of appointment and the office carries no fixed term. We also recognized that the power to remove could be limited by constitutional or statutory provisions:

> "In 67 C.J.S., Officers, Section 59b(2), the text contains this language: 'As a general rule, in the absence of any limiting provision of a constitution [7] or statute, the power of appointment carries with it, as an incident, the power to remove, where no definite term of office is fixed by law.'" [8] 150 W.Va. at 264, 144 S.E.2d at 794.

*See also* 63A Am.Jur.2d *Public Officers & Employees* § 221 (1984). Thus, *Archer* would permit the removal of an assistant attorney general even if the word "pleasure" was not found in W.Va.Code, 5–3–3, because this section authorizes the Attorney General to appoint assistant attorneys general and provides no set term for their employment. Finally, when the appointing authority has the power of removal, this removal right may not be "contracted away so as to bind the appointing body to retain [the employee] in such position for a definite fixed period." Syllabus Point 4, in part, *Barbor v. County Court, supra*. This concept has been followed in other jurisdictions.

For example, in *Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo.1990), the Colorado Supreme Court examined a statute that allowed a sheriff to appoint deputies and also to "revoke such appointments at his pleasure." The discharged deputy claimed that the sheriff's Policy and Procedure Manual gave him an implied contract right to continued employment. The court began by noting that the deputy was an at-will employee who could be discharged without cause. Moreover, the Colorado court found that this power of removal could not be limited by personnel rules. In reaching this decision,

the court relied on its earlier case of *Johnson v. Jefferson County Board of Health*, 662 P.2d 463, 471 (Colo.1983), where the statute

> "provided that a county public health officer 'shall be appointed by the board to serve at the pleasure of the board.' We held that the board's statutory power to terminate the public health officer was not limited by the county personnel rules because the rules did 'not override the explicit statutory authority of the board to discharge a public health officer appointed by the board.'" 791 P.2d at 699.

Accordingly, the *Seeley* court concluded: "Sheriff Brown did not possess the statutory authority to limit his power to discharge Seeley 'at his pleasure.'" 791 P.2d at 700. (Citation omitted). *See also Gowey v. Siggelkow*, 85 Idaho 574, 382 P.2d 764 (1963); *Shows v. Morehouse Gen. Hosp.*, 463 So.2d 884 (La.App.), *writ denied*, 464 So.2d 1385 (La.1985); *State ex rel. Bonner v. District Court of First Judicial Dist.*, 122 Mont. 464, 206 P.2d 166 (1949); *Roadmix Constr. Corp. v. State*, 143 Neb. 425, 9 N.W.2d 741 (1943). *See generally* 63A Am.Jur.2d *Public Officers & Employees* at § 223.

Much the same approach has been followed by the federal courts. In *Fiorentino v. United States*, 221 Ct.Cl. 545, 607 F.2d 963 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), an attorney employed by the Department of Housing and Urban Development (HUD) was terminated. He sought reinstatement on the basis that he had a property interest in his continued employment based on certain statements found in HUD's employment handbook. The court began its analysis by stating that "the Congress has been always opposed to Civil Service Commission (CSC) testing and examining of attorney positions in the Executive

---

**7.** We have recognized that at-will government employees cannot be terminated for exercising certain constitutional rights. *See, e.g., Adkins v. Miller*, 187 W.Va. 774, 421 S.E.2d 682 (1992) (political firings unconstitutional); *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984) (First Amendment protection of free speech).

**8.** This language is now found in Section 118(b) (1978) of 67 C.J.S. *Officers and Public Employees* (1978), where this additional statement is found: "Moreover, this implied power to remove cannot be contracted away so as to bind the appointing bodies to retain an officer for a definite fixed period. Accordingly, the person having the power of appointment may remove officers or employees appointed by his predecessor." (Footnotes omitted).

branch under the competitive system." 221 Ct.Cl. at 548, 607 F.2d at 966. The court further explained that an executive order exempted attorneys in the executive branch "from the competitive system." 221 Ct.Cl. at 549, 607 F.2d at 966. This exemption from civil service brought the following legal result: "The consequences of one's being in the 'excepted' service (and not a veteran) are that one cannot put on the panoply of protection available to those in the 'competitive' service when threatened by adverse action for cause." 221 Ct.Cl. at 549, 607 F.2d at 966. (Citations omitted).

The *Fiorentino* court then addressed whether an executive agency could, through its personnel handbook or other regulation, give an employee a protected property interest in continued employment. After reviewing several cases, the court concluded that an agency could not do so because its action would violate the law that decreed the position to be unprotected:

"It is unfortunately all too common for government manuals, handbooks, and in-house publications to contain statements that were not meant or are not wholly reliable. *If they go counter to governing statutes ..., they do not bind the government, and persons relying on them do so at their peril.*" 221 Ct.Cl. at 552, 607 F.2d at 968. (Emphasis added).

*See also Baden v. Koch,* 638 F.2d 486 (2d Cir.1980); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980); [9]

*Smith v. Sorensen,* 748 F.2d 427 (8th Cir. 1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985).

### III.

■ From the foregoing, we draw these conclusions. First, W.Va.Code, 5-3-3, by providing that "assistant attorneys general ... shall serve at the pleasure of the attorney general," defines an at-will employment allowing termination at any time with or without cause. Thus, the trial court correctly answered the first certified question.

■ Second, although assistant attorneys general receive certain employment-related benefits, such as health insurance and retirement, as do other state employees, they remain at-will employees. These statutory fringe benefits are available to all public employees and, therefore, cannot be construed to give a select few an implied contract of employment.[10] Neither *Barbor* nor its progeny recognize an implied contract of continued employment in the public employment sector. Consequently, the trial court answered the second certified question correctly.

■ The third certified question is whether the Attorney General owes to assistant attorneys general a duty of good faith and fair dealing with regard to employment. Unlike the circuit court, we think such a duty is not owed. Some courts have implied the duty in the private employment sector.[11]

9. In *Quinn,* the court observed that an employee may have a protected liberty interest if, in the course of terminating an at-will employee, the public agency made false public statements involving imputations of illegal, dishonest, or immoral conduct. *See also Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). No such claim is advanced in this case.

10. The plaintiff relies on *Adkins v. INCO Alloys International, Inc.,* 187 W.Va. 219, 417 S.E.2d 910 (1992), but that case addressed an alleged breach of an implied contract based upon the industry's custom and usage. The plaintiff also cites *McClung v. Marion County Commission,* 178 W.Va. 444, 360 S.E.2d 221 (1987), where we

held that an at-will public employee could not be subject to a retaliatory discharge. However, the plaintiff does not argue that a retaliatory discharge occurred in this case. Finally, the plaintiff's reliance on *West Virginia University v. Sauvageot,* 185 W.Va. 534, 408 S.E.2d 286 (1991), is misplaced. There, we found that the appointing authority by issuing a series of one-year employment contracts to Ms. Sauvageot, along with its policy to retain the most senior personnel when laying off employees, created a legitimate claim of entitlement. No at-will issue was raised.

11. *See, e.g., Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974). *See generally* 82 Am.Jur.2d *Wrongful Discharge* § 129, *et seq.* (1992).

However, we have not found a jurisdiction that has applied this rule to at-will public employment. Imposing this duty would be contrary to the general principles contained in *Barbor* and elsewhere that grant the appointing authority an unfettered right to terminate an appointee. Thus, contrary to the trial court, we answer the third certified question in the negative.

## IV.

The certified questions having been answered, this case is dismissed from the docket.

Answered and dismissed.