724 S.E.2d 744

**WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Petitioner**

v.

**Michelle L. FALQUERO, Respondent.**

No. 11–0629.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2012.

Decided March 22, 2012.

Kristin A. Boggs, Department of Environmental Protection, Charleston, WV, for Petitioner.

Thomas H. Peyton, Peyton Law Firm, Nitro, WV, for Respondent.

McHUGH, Justice:

The West Virginia Department of Environmental Protection (hereafter "DEP") brings this petition to appeal an October 26, 2010, order of the Circuit Court of Kanawha County. By way of the October 26 order, the circuit court affirmed the decision of the West Virginia Public Employee's Grievance Board (hereafter "Grievance Board" or "Board") with regard to the grievance filed by Michelle L. Falquero, respondent herein. According to the Grievance Board's Decision, merit was found in Ms. Falquero's contention that her job at DEP should not have terminated because she could and did rescind her voluntary resignation before DEP had accepted it. The Decision then ordered DEP to reinstate Ms. Falquero with back pay.

DEP maintains that the lower court incorrectly affirmed the Grievance Board. The agency argues that the Grievance Board's decision to allow a voluntary resignation of a public employee to be withdrawn was not grounded in established state law. Additionally, DEP claims that the administrative law judge (hereafter "ALJ") acted arbitrarily and capriciously and exceeded his statutory authority when he did not follow a 1991 decision of the Grievance Board.

Having studied the record and reviewed the arguments of the parties in consideration of applicable legal authority, we affirm the order of the circuit court for the reasons discussed below.

## I. Factual and Procedural Background

We preface this portion of the opinion with the explanation that the information set forth below is primarily taken from the factual findings contained in the October 26, 2010, order of the circuit court. This includes reliance on the Findings of Fact stated in the Grievance Board Decision which were adopted by reference in the circuit court order. The facts are not contested, and the majority of documents referenced and quoted in the order and decision are not part of the appendix accompanying the appeal.

Ms. Falquero was employed by DEP for almost five years when she filed her grievance on May 15, 2008. At the time of filing, Ms. Falquero held the classified position of Secretary II in DEP's Public Information Office. Ms. Falquero's grievance contained two primary allegations: (1) that she had been constructively discharged due to a hostile work environment which spurred her to tender a letter of resignation; and (2) that when her working conditions improved she was wrongly denied the opportunity to rescind the voluntary resignation even though DEP had not formally accepted it.

The assertion of a hostile work environment centers on the behavior and actions of other secretaries employed under a different classification [1] but working in the same suite of offices where Ms. Falquero was located. Initially, Ms. Falquero discussed the hostile workplace issue with DEP's Equal Employment Opportunity and Grievance Coordinator (hereafter "Grievance Coordinator" or "Coordinator") on two separate occasions in 2007. The coordinator extended advice regarding the right to file a grievance, and offered to speak with Ms. Falquero's supervisor, but Ms. Falquero declined her assistance in proceeding with either option at that time.

Ms. Falquero met with Randy Huffman to discuss her concerns on February 22, 2008. At that time Mr. Huffman was DEP's Assistant Cabinet Secretary. He told Ms. Falquero that he would discuss the work situation with her newly hired supervisor, Kathy Cosco, as well as with DEP's Human Resources Office. On February 27, 2008, Ms. Falquero met with Ms. Cosco who indicated that Mr. Huffman had not spoken with her about the work environment issues. However, during the course of their conversation Ms. Cosco told Ms. Falquero that there were plans at some future point to move her to a comparable work station in another part of the build-

---

1. The other secretaries primarily provided support services to DEP's Cabinet Secretary and General Counsel and not DEP's Public Information Office.

ing, located closer to Ms. Cosco and the Public Information Office.

Not convinced that this proposal would adequately address her concerns, Ms. Falquero presented Ms. Cosco with a letter of resignation on February 28, 2008. The letter stated: "This letter serves as notice that I am resigning from my position at the West Virginia Department of Environmental Protection. My last day of work will be June 15, 2008." Ms. Cosco responded by saying "okay."

Ms. Cosco's plans to relocate Ms. Falquero to a different office proceeded and apparently resolved some of the problems Ms. Falquero experienced since she asked Ms. Cosco on March 26, 2008, if she could rescind her resignation. Ms. Cosco responded that she did not know. On March 27, 2008, Ms. Falquero submitted a memo to Ms. Cosco and to Sandy Kee, DEP's Manager of Human Relations, stating "As of today I am rescinding my resignation. Thank you."

DEP addressed Ms. Falquero's letter of resignation for the first time in a letter dated April 1, 2008. The letter, written by Ms. Cosco and directed to Ms. Falquero, contained the following statements:

> The West Virginia Department of Environmental Protection (DEP) accepted your February 28, 2008, letter resigning your position as a Secretary II with the DEP's Public Information Office. On March 27, 2008, you notified me in writing that you were rescinding your resignation. I regret to inform you that the DEP has decided to deny your request and that your last day of employment will be June 15, 2008, as you initially indicated in your letter of resignation.

On May 1, 2008, Mr. Huffman advanced to the DEP position of Cabinet Secretary. In a meeting with Ms. Cosco concerning a new staffing plan for the Public Information Office, Secretary Huffman told Ms. Cosco that he would allow Ms. Falquero to rescind her resignation if Ms. Falquero agreed to two conditions. These conditions were that Ms.

Falquero (1) sign a form accepting the new job duties she would be performing in the new staffing plan as depicted on an Employee Performance Appraisal (hereafter "EPA") form,[2] and (2) draft a respectful letter indicating that she was no longer in a hostile work environment. The terms of this proposal were presented to Ms. Falquero by Ms. Cosco in a meeting on May 8, 2008.

Sometime thereafter, the Grievance Coordinator sent an e-mail to Ms. Falquero which included information Secretary Huffman wanted to relay to Ms. Falquero about her continued employment with the agency. In addition to iterating the terms of her continued employment, the e-mail noted that if she failed to submit the requested documents "the resignation [she] submitted to the agency dated February 28, 2008, [would] be processed as requested by [her]." Ms. Falquero declined to comply and instead filed an employee grievance on May 15, 2008.

On May 20, 2008, Secretary Huffman sent an e-mail to Ms. Falquero stating that she had until May 30, 2008, to sign the EPA and return it to Ms. Cosco, and noting that signing the EPA would not prejudice her right to contest the duties therein listed. The Secretary further said that the condition of writing a letter regarding the hostile work environment was withdrawn. Finally the e-mail indicated that Ms. Falquero's failure to sign the EPA as it was presented to her and to submit it by May 30 would "foreclose any possibility that the Department [would] reconsider its decision to deny [Grievant's] recission [sic] request." Ms. Falquero refused to sign the form and her final day of employment was June 15, 2008.

The Level 1 hearing regarding the grievance was held on June 9, 2008. On July 28, 2008, Secretary Huffman signed an order denying the grievance. On October 15, 2008, the parties were unsuccessful in their attempt to mediate the grievance, and the matter was appealed to Level 3. The Level 3 hearing was held on October 16, 2008. Ac-

---

**2.** Although the form on which the new job description was written would typically be used for an employee performance evaluation, no such evaluation occurred in this instance. Further-

more, it is undisputed that Ms. Falquero's job performance was never evaluated during the course of her employment with DEP.

cording to the resulting Decision of the ALJ, the hearing was limited to the issues of "whether ... [Ms. Falquero's] work environment was so intolerable that her resignation may be construed as a constructive discharge and whether the DEP properly refused to allow ... [Ms. Falquero] to rescind her resignation."

The ALJ rendered his Decision on December 16, 2008, denying the hostile work environment/constructive discharge portion of the grievance, but granting the grievance on the basis that DEP improperly refused to allow Ms. Falquero to withdraw her resignation. The ALJ ordered DEP to reinstate Ms. Falquero to her former position with back pay.

As to the reasoning for allowing withdrawal of the resignation, the Decision reflects that the ALJ relied upon grievance board decisions [3] involving professional school employees concluding that a voluntary resignation may be withdrawn as long as the employer has not accepted it. Additionally, the Decision indicates reliance on this Court's decision in *LeMasters v. Board of Education of Grant District*, 105 W.Va. 81, 141 S.E. 515 (1928), holding that a school employee under contract who tenders a resignation is making an offer to mutually rescind the contract of employment; the offer is not binding and may be withdrawn until accepted by the employer. The ALJ expressly recognized in the Decision that the Grievance Board case of *Copley v. Logan County Health Department*, Docket No. 90–LCHD–531 (May 22, 1991), distinguished the terms of employment of education employees from classified employees. As discussed in the Grievance Board Decision, *Copley* concluded that the terms of employment of a teacher and public employee were different in that a teacher is bound by a definite term of one year of service whereas the term of employment of public employees is indefinite. Based upon this distinction, it was determined in *Copley* that teachers' terms of employment are more for-

mal and require a formal agreement to rescind the contract, whereas public employees' terms of employment are indefinite, subject to termination at any time by either party as an at-will employment arrangement.

The ALJ found fault with the conclusion arrived at in *Copley* in that it did not account for the Administrative Rules for the West Virginia Division of Personnel establishing that once an employee successfully completes a probationary period they are considered permanent employees who may only be terminated for cause and as such are not at-will employees. Finding that neither education employees nor classified employees are subject to at-will employment contracts, the ALJ proceeded to apply the rule governing withdrawal of resignations applicable to education personnel to the facts in the Falquero case. The ALJ determined that the evidence demonstrated that Ms. Falquero rescinded her resignation before DEP accepted it.

DEP appealed the Level 3 decision to the circuit court, arguing that the decision was contrary to statutory, administrative, and common law of the state. On October 26, 2010, the circuit court affirmed the decision, adopting the findings and conclusions of the ALJ in their entirety. It is from this circuit court order that DEP now appeals.

## II. Standard of Review

 This case is before the Court on appeal of a circuit court order affirming a decision of the West Virginia Public Employees Grievance Board.[4] In such circumstances, "[t]his Court reviews decisions of the circuit court under the same standard as that by which the circuit [court] reviews the decision of the ALJ." *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). The procedure governing appeals of a decision of an administrative law judge in public employees grievance cases is set forth in West Virginia Code § 6C–2–5 (2007). The statutory grounds for appeal include that the decision:

3. No copy of any prior grievance board decisions considered by the ALJ were included in the record on appeal.

4. The West Virginia Public Employees Grievance Board was created by the Legislature as an inde-

pendent entity under the Department of Administration on July 1, 2007, superseding the Education and State Employees Grievance Board. 2007 W.Va. Acts ch. 207; W.Va.Code § 6C–3–1(b) (2007).

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

(2) Exceeds the administrative law judge's statutory authority;

(3) Is the result of fraud or deceit;

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W.Va.Code § 6C–2–5(b). The grounds contain both factual and legal determinations which entail varying levels of review. As explained in syllabus point one of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000),

> [g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

We proceed to consider the issues raised within the context of these established standards.

## III. Discussion

DEP assigns error to the lower court's affirmance of the Grievance Board Decision allowing a public employee to rescind a voluntary resignation by claiming that the decision: (1) had no basis in statutory, common or administrative law, and (2) failed to follow the precedence established in the long-standing decision of the Grievance Board in *Copley v. Logan Co. Health Department.*

DEP proposes that the circuit court erred in upholding the Grievance Board in this case because the ALJ incorrectly relied on decisions involving education employees rather than the *Copley* Grievance Board decision in order to determine whether Ms. Falquero's resignation was properly handled. DEP maintains that the Grievance Board decision in *Copley* represents the correct statement of law in its holding that a public employee's contract of employment, being a contract of indefinite duration, may be terminated simply by the act of the public employee tendering a resignation, and does not require acceptance of the employing agency to be effective. As DEP explains, a comparison was made in *Copley* between the employment contract of a teacher and that of a public employee, and it was found that a teacher's contract was one of an employment for a definite term whereas a public employee's contract was an employment for an indefinite term. Thereafter, DEP concludes that the *Copley* decision followed settled law that an employment contract of indefinite duration may be terminated at any time by either party to the at-will contract. Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955). Additionally, the agency points out that there is no express requirement in the law of this State that voluntary resignations must be acknowledged in writing or by any other formality.

■ DEP's argument is based on the flawed premise that classified civil service employees may be treated as at-will employees. This Court has unequivocally said that "[a] person covered under a civil service system is afforded certain statutory protections surrounding his employment and is, therefore, *not* an at-will employee." *Williams v. Brown*, 190 W.Va. 202, 205, 437 S.E.2d 775, 778 (1993) (emphasis added). This observation is based on our holding in syllabus point four of *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977), that "[a] State civil service classified employee has a property interest arising out of the statutory entitlement to continued uninterrupted employment." DEP indicated during oral argument that our case law establishing that public employees are not at-will extends only to *terminations* of classified public employees. Even if this assertion were true, refusal to accept a public employee's withdrawal of a prospective resignation has been viewed as having the same effect as termi-

nating a public employee without cause. *See Holt v. Personnel Advisory Bd. Of the State of Mo.,* 679 S.W.2d 340, 343 (Mo.App. W.D. 1984), superseded by statute on other grounds (refusal to honor withdrawal of tendered resignation of public employee before it was effective or accepted is "tantamount to an involuntary dismissal"); *Koltonuk v. Laureldale,* 443 F.Supp.2d 685, 693 (E.D.Pa.2006) (applying Pennsylvania law to find that ignoring revocation of resignation letter of public employee amounted to termination). It is also noteworthy that the withdrawal of resignations of classified public employees is commonly treated in similar fashion to resignations of public officers rather than private sector at-will employees. *See* 63C Am.Jur.2d *Public Officers and Employees* § 156 (2009); 67 C.J.S. *Officers and Public Employees* § 137 (2002).

In the present case, the Decision of the Grievance Board acknowledges the premise that public employees are not at-will employees even though our decisions in *Waite* and *Williams* are not expressly referenced. Instead, in distinguishing the Board's previous determination in *Copley,* the ALJ relied upon the Administrative Rules embracing the premise from *Waite* and *Williams* that public employees are not at-will employees. The Decision states:

> The Administrative Rules for the West Virginia Division of Personnel state that for a classified, state employee, "Permanent [employment] status begins the first day following the expiration of the probationary period." 143 C.S.R. 1 § 10.1. The Procedural Rules also require that an appointing authority may only terminate the employment of a classified employee for cause.... 143 C.S.R. 1 § 12.1. Thus, a classified, state employee does not have an employment contract of an indefinite term as described in *Copley* .... Rather, the contract of employment is continuing, unless terminated for cause. In this respect, the employment of classified state employees is similar to that of education employees.

Based upon this analysis, the ALJ concluded in the Decision that

[b]ecause neither education employees nor classified, state employees have at will employment contracts, there is no reason for a different rule regarding the effect of recision of resignations by these two groups of employees.

In keeping with the treatment accorded teachers in *LeMasters v. Board of Education of Grant District,* 105 W.Va. 81, 141 S.E. 515 (1928), the ALJ then proceeded to apply standard contract principles to the resignation of Ms. Falquero. Thus, the resignation was taken as an offer to mutually rescind the contract of employment, which is not binding on either party to the contract until accepted by the employer.

█ We find this reasoning sound and in keeping with our previous recognition of statutory protections afforded civil servants, as well as with the generally accepted principle that "absent valid enactments to the contrary, a public employee can withdraw a resignation." 63C Am.Jur.2d *Public Officers and Employees* § 156 (2009). *See also* 15A Am.Jur.2d *Civil Service* § 66 (2011); 67 C.J.S. *Officers and Public Employees* § 137 (2002). The Supreme Court of Ohio when faced with this very issue held in *Davis v. Marion County Engineer,* 60 Ohio St.3d 53, 573 N.E.2d 51, 54 (1991), that "[a] public employee may rescind or withdraw a tender of resignation at any time prior to its effective date, so long as the public employer has not formally accepted such tender of resignation." *See also Ex parte Rhea,* 426 So.2d 838, 840 (Ala.1982) (holding that public employee entitled to reinstatement where correspondence tendering resignation was not accepted prior to letter withdrawing the same); *Holt v. Personnel Advisory Bd. of the State of Mo.,* 679 S.W.2d at 343 (holding resignation of merit system employee that is prospective or conditional in character may be withdrawn at any time before it is accepted); *Poland v. Glover,* 111 F.Supp. 675, 676 (W.D.N.Y.1953) (holding that prospective resignation of public employee could not be accepted except upon the terms stated therein); *Travis v. Tacoma Pub. Sch. Dist.,* 120 Wash.App. 542, 85 P.3d 959, 964 (2004) (holding that public employee may not withdraw resignation after employer has accepted it). Based upon these generally recognized principles and in consid-

eration of the protection provided classified public employees in this State, we hold that unless otherwise provided by law, a classified public employee may rescind or withdraw a tender of resignation at any time prior to its effective date as long as the withdrawal occurs before acceptance by the employing agency.

This leads to the question of what constitutes acceptance of a resignation. DEP maintains that Ms. Cosco's response of "okay" when she was handed the resignation letter represents acceptance. The agency further notes that the administrative rule of the West Virginia Division of Personnel [hereafter "DOP"] governing resignations is silent as to acceptance of an employee's resignation. The rule only requires the employing agency to notify DOP of the resignation. W. Va.C.S.R. § 143–1–12–1.[5] DEP further contends that if the DOP found it necessary or beneficial for voluntary resignations to be confirmed by the agency in any particular manner DOP would have imposed formal confirmation requirements as it did in the rule governing dismissals and suspensions. *See* W. Va.C.S.R. § 143–1–12.2, 12.3. We do not find this comparison relevant to whether any indication of acceptance of the appointing agency has occurred for withdrawal purposes. We also do not find that simply stating "okay" is an indication of acceptance when other actions of the agency do not contemplate acceptance.

Other jurisdictions have examined when acceptance of a resignation occurs. In Ohio, the Supreme Court has specifically found that "[a]cceptance of a tender of resignation from public employment occurs where the public employer ... initiates some type of affirmative action, preferably in writing, that clearly indicates to the employee that the tender of resignation is accepted." *Davis v. Marion Co. Engineer*, 573 N.E.2d at 54. A somewhat broader approach was taken by the Supreme Court of California in *Armistead v. State Personnel Board*, 22 Cal.3d 198, 149 Cal.Rptr. 1, 583 P.2d 744 (1978). Applying a civil service rule comparable to that before us, the California high court determined that a civil servant has the right to withdraw a resignation as long as withdrawal is done "(1) before its effective date, (2) before it has been accepted, and (3) before the appointing power acts in reliance on the resignation." *Id.*, 149 Cal.Rptr. 1, 583 P.2d at 748.

■ We find no reason to follow the course taken by some states of imposing a rigid requirement on governmental agencies to formally, in writing or other prescriptive means, indicate acceptance whenever a classified public employee tenders a resignation. Nevertheless, the tender of a resignation should not render an agency at the mercy of the employee until the appointed date of resignation arrives. Consequently, we adopt a more flexible approach by holding that acceptance of a tender of resignation of public employment may occur when the employer (1) clearly indicates acceptance through communication with the employee, or (2) acts in good faith reliance on the tender.

■ In the present case, the ALJ found as a matter of fact that DEP took no action regarding Ms. Falquero's resignation until after she had formally rescinded it. No evidence was presented by DEP that any formal or informal actions were taken by the agency in reliance on the resignation when it was tendered. The Grievance Board Decision specifically addressed the evidence presented with regard to acceptance.

Perhaps most telling [of the lack of indication that DEP had accepted the resignation offer] is the language in the May 15, 2008, e-mail from [the Grievance Coordinator] to Grievant. [The Coordinator] states that, through the e-mail, she was communi-

---

5. The pertinent portion of the Code of State Regulations governing resignations of classified public employees states:

§ 143–1–12. Separations, Suspension, and Reinstatement.

12.1 Resignations.—An employee who resigns shall present the reasons for the resignation in writing to the appointing authority.

The appointing authority shall forward a copy of the resignation to the Director of [the Division of] Personnel who shall record the resignation. If a written resignation cannot be obtained, the appointing authority shall notify the Director of Personnel in writing of the resignation of the employee and the circumstances of the resignation.

cating information to Grievant from Cabinet Secretary Huffman. [The Coordinator] spelled out certain conditions that Grievant must meet to have her resignation rescinded and then stated: "If [Ms. Cosco] does not receive this information, the resignation you submitted to the agency dated February 28, 2008, *will be processed* as requested by you." (Emphasis Added). The obvious implication is that DEP had taken no action regarding Grievant's resignation but would do so if she did not comply with the specific conditions. There is no evidence that DEP accepted Grievant's offer to resign her employment until after she rescinded the offer.... Since Grievant's offer to resign was rescinded before it was accepted, the resignation is void and Grievant remains an employee of DEP.

The evidence was not in dispute and established that acceptance of the resignation did not occur.

Based upon our review and in light of our rulings regarding when a classified public employee may withdraw a tendered resignation, we find no error and affirm the order of the circuit court upholding the ruling of the Grievance Board.[6]

### IV. Conclusion

As a result of the foregoing discussion, the October 26, 2010, order of the Circuit Court of Kanawha County upholding the December 16, 2008, West Virginia Grievance Board Decision is affirmed.

Affirmed.

---

6. DEP also asserts error on the basis that the ALJ acted arbitrarily and capriciously and exceeded his authority by overruling a previous decision of the Grievance Board. As reflected in our holdings, we have found the reasoning of the ALJ helpful in clarifying the law in an area which had not heretofore been addressed by the judiciary.