## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Chris Minor,**
**Plaintiff Below, Petitioner**

**FILED**

April 25, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0758** (Harrison County 11-C-279)

**City of Stonewood and John M. Hines, Sr.,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner Chris Minor, by counsel Jerry Blair, appeals the Harrison County Circuit Court's May 22, 2013, order granting summary judgment to respondents and denying his cross-motion for summary judgment. Respondents City of Stonewood, by counsel Molly Underwood Poe, and John M. Hines Sr., by counsel James Stebbins, Joseph L. Jenkins, and Gregory H. Shillace, respond in support of the circuit court's order. Petitioner also filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I.  Factual and Procedural Background

Petitioner Chris Minor is a resident of Harrison County, West Virginia, who was employed by the City of Stonewood ("the City") as the chief of police beginning on February 1, 2011.[1] John M. Hines Sr. ("Hines") is the elected mayor of the City who took office on July 1, 2011. Petitioner alleges that on June 22, 2011, he and the City entered into a five-year employment contract for him to serve as the chief of police.[2] On June 27, 2011, after Hines was elected but was not yet the mayor, he notified petitioner that he would no longer be the chief of police once Hines assumed the office of the mayor. On July 1, 2011, petitioner appeared for work in full uniform and confronted Hines about his employment. Petitioner recorded the encounter on a tape recorder, unknown to Hines, and a complete copy of the recording is of

---

[1]Prior to being appointed as Chief of Police, petitioner worked as a police officer for the City.

[2]According to respondents, the five-year employment contract was entered into during the "lame duck" period for the previous mayor, that is the period after Hines was elected but before he took office.

1

record in this case. During the July 1 conversation, Hines informed petitioner that he would no longer be employed by the City from that date forward. As the circuit court found, the recording evidences the fact that Hines did not raise his voice, did not make any threats, and was simply "matter of fact." Pursuant to petitioner's request that he receive written notice of his termination, Hines' personal attorney sent a July 1, 2011, letter to petitioner informing him that his employment as the chief of police for the City ended on July 1, 2011, at 12:00 a.m. The letter directed petitioner to immediately return all equipment and/or property issued to him by the City and informed him that if he did not comply with the request by July 3, 2011, at 10:00 a.m., a warrant would be issued for his arrest pursuant to West Virginia Code § 8-10-1.

Petitioner claims that he was unable to obtain employment for over a year following his termination. Due to his employment issues, he claims that he suffered great financial losses and sought psychological counseling and therapy. Petitioner filed suit against the City and Hines seeking damages for breach of contract, intentional infliction of emotional distress/outrage, and deprivation of constitutional rights. On October 1, 2012, the circuit court entered an order granting partial summary judgment to respondents and voiding the alleged five-year written contract based upon West Virginia Code § 11-8-26.[3] In its subsequent order granting summary judgment to respondents and denying petitioner's cross-motion for summary judgment, entered on May 22, 2013, the circuit court found that the alleged five-year written contract was void at its inception and cannot be the basis for a breach of contract or wrongful termination claim.

In its order, the circuit court also found that there is no legal authority that mandated that the City permit petitioner to retain his previous rank and position with the City after his removal as the chief of police. It found that while West Virginia Code § 8-14-17 allows a chief of police of a Class I or Class II municipality to retain his or her prior rank and position following removal (except removal for good cause), the Legislature did not extend such protections to chiefs of police in Class IV municipalities, such as the City of Stonewood. The circuit court also found that after petitioner was removed from the position of chief of police, he was no longer a policeman and, therefore, could not have been entitled to a hearing under West Virginia Code § 8-14A-3, which applies only to police officers and firefighters. It further found that while he was still chief of police, petitioner was exempt from the hearing requirement under that Code section because, under West Virginia Code § 8-14A-1(6), the procedures and protections set forth in Article 14A do not apply to "the highest ranking officer of the police." It also concluded that the provisions and protections of Article 14A apply only to "accused officers," defined in West Virginia Code § 8-14A-1(1) as a police officer or firefighter who is "the subject of an investigation or interrogation." As set forth by the circuit court, "[i]t is undisputed in this case that [petitioner] was not removed from his position . . . for cause; in fact, there are no allegations of wrongdoing on [petitioner]'s part with respect to his removal from office as Chief of Police. [Petitioner] was simply never the subject of an 'investigation' or 'interrogation' by the City. . . ."

The circuit court also addressed the employee handbook, finding that under West Virginia law employment is presumed to be at will and a plaintiff relying upon a handbook as a basis for an implied employment contract must establish that there is a "definite promise therein by the employer not to discharge covered employees except for specific reasons." Syl. Pt. 3, in

---

[3]West Virginia Code § 11-8-26 addresses unlawful expenditures by a local fiscal body.

part, *Suter v. Harsco Corp.*, 184 W.Va. 734, 403 S.E.2d 751 (1991). It further found that a plaintiff who relies upon language in a handbook providing a list of reasons for discipline or discharge can only establish a prima facie case of an implied contract if it is clear that it was meant to be a "complete list." *Id.* at 736 n.2, 403 S.E.2d at 753 n.2. The circuit court concluded that the employee handbook at issue does not meet the test insofar as it specifically states under its discipline section that "this list is not exhaustive." The circuit court also found as a matter of law that there is nothing about the manner in which petitioner was separated from his employment that could be construed by a trier-of-fact as outrageous. Therefore, the circuit court concluded that there were no genuine issues of material fact with respect to petitioner's claims and respondents were entitled to judgment as a matter of law. Petitioner appeals from that order.

## II. Standard of Review

Petitioner appeals the circuit court's grant of summary judgment to respondents and the denial of his cross-motion for summary judgment. Our standard of review for such an order is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 2, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

## III. Discussion

On appeal to this Court, petitioner asserts four assignments of error. Petitioner first argues that the circuit court did not apply the law correctly, abused its discretion, and was clearly erroneous by declaring the written employment contract between petitioner and the City void. He asserts that the circuit court did not have the authority to declare the contract void and points to the fact the contract was adopted by resolution of the city council and that there had been partial performance of that contract through petitioner's service as chief of police. Petitioner's argument ignores West Virginia Code § 11-8-26, which states in relevant part: "(a) Except as provided in sections fourteen-b [§ 11-8-14b], twenty-five-a [§ 11-8-25a] and twenty-six-a [§ 11-8-26a] of this article, a local fiscal body shall not expend money or incur obligations: . . . (3) In excess of the amount allocated to the fund in the levy order; or (4) In excess of the funds available for current expenses."

> This Court has explained that "[t]hroughout its history the basic history of the statute has been that a local fiscal body shall make no contract and incur no obligation which would involve the expenditure of future levies." *Edwards v. Hylbert*, 146 W.Va. 1, 18, 118 S.E.2d 347, 356 (1960) (internal quotation marks and citations omitted). The Court has further noted that "[n]ecessity and inconvenience will not justify the bending or breaking of this law." *Shonk Land Co. v. Joachim*, 96 W.Va. 708, 721, 123 S.E. 444, 449 (1924).

*Dunbar Fraternal Order of Police, Lodge No. 119 v. City of Dunbar*, 218 W.Va. 239, 243 n.1, 624 S.E.2d 586, 590 n.1 (2005). The contract at issue was a five-year employment contract. By its terms, it clearly involved the expenditure of funds beyond the fiscal year in which the contract was entered into by petitioner and the City. Based on the statutory language, our precedent, and the record before us, we find that the circuit court did not err in granting summary judgment to

respondents on this issue.

Petitioner's second assignment of error is the alleged governmental arbitrariness in the reinstatement of removed chiefs to their prior rank and employment with the police force. He contends that he was deprived of significant rights when his employment was terminated without cause while respondents were acting under the color of governmental authority. Petitioner's argument is based largely on the fact that the prior chief of police for the City became a police officer for the City when he was no longer chief. Petitioner also argues that he was simply not re-appointed to the highest rank of the department, pointing to West Virginia Code § 8-10-1b, a statute that did not go into effect until July 12, 2013. That statute provides that a Class III city or Class IV town or village may provide by ordinance whether the individual appointed chief of police who held a position as a member of the paid police department prior to his or her appointment as chief of police shall be reinstated to the officer's previous rank following his or her term as chief. *Id.* That same statute permits a mayor of such city, town, or village to appoint a chief of police. *Id.* Petitioner also asserts that respondents' actions were contrary to the provisions of West Virginia Code § 8-14A-1 because petitioner was not afforded his due process rights regarding his termination.

There is no dispute that the City is a Class IV municipality that is not subject to the civil service requirements set forth in West Virginia Code §§ 8-8-14 or 8-8-15. By its terms, West Virginia Code § 8-14A-1(1) defines "accused officer" as any "police officer or firefighter who is the subject of an investigation or interrogation which results in a recommendation of punitive action against him or her." Petitioner was not under investigation and was not the subject of an interrogation, so he does not fall under the definition of an "accused officer." West Virginia Code § 8-14A-1(3) defines hearing as "any meeting in the course of an investigatory proceeding. . . ." It is clear from the record that there was no investigatory proceeding related to petitioner. West Virginia Code § 8-14A-1(6) also defines police officer to specifically exclude "the highest ranking officer of the police . . . department. . . ." The highest ranking member of the department for the City is the chief of police, so the statute clearly excludes petitioner from the definition of police officer. For these reasons, we find that petitioner was not entitled to a hearing pursuant to West Virginia Code § 8-14A-1. In addition, due to the fact that West Virginia Code § 8-10-1b was enacted subsequent to petitioner's termination from employment with the City, it is not applicable to his termination. For these reasons, we find that the circuit court did not err in granting summary judgment to respondents on this issue.

Petitioner's third assignment of error is his assertion that the lower court did not apply the law correctly, abused its discretion, and was clearly erroneous by finding that the employee handbook did not create an implied contract under West Virginia law. Without citing any authority for the proposition, petitioner argues that it is long-established in West Virginia that an employee handbook may be interpreted as a contract between an employer and employee. He contends that because the handbook does not provide for termination of an employee without cause, petitioner's employment was not at will. Petitioner concedes that the handbook provides the mayor with the final authority on all administrative and personnel matters, but he contends that the handbook cannot overrule West Virginia Code §§ 8-3-2 and 8-1-2(b)(1). He also points to an ordinance enacted by the City that city council will not honor, acknowledge, approve, or consider any action made by any committee or individual until the council has had the

4

opportunity to inform itself concerning that action and to pass upon it in the usual manner at a council meeting.

Petitioner's claimed error ignores the fact that in the absence of other evidence, West Virginia law presumes that employment is at will. *See W.Va. Dept. of Envir. Protection v. Falquero*, 228 W.Va. 773, 778, 724 S.E.2d 744, 749 (2012) (citing Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955)). While an employee handbook may form the basis of a unilateral contract, that is only the case if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons. Syl. Pt. 3, *Suter v. Harsco Corp.*, 184 W.Va. 734, 403 S.E.2d 751 (1991). Based upon the record before this Court, we find that petitioner has failed to establish that such implied contract existed under the employee handbook. The employee handbook provides a list of offenses under the disciplinary procedures section, but it specifically states that the list is not exhaustive.

In addition, the City ordinance cited by petitioner does not require that the employment decisions of the mayor be honored, acknowledged, or approved by council. The mayor is granted significant power and discretion related to employment and personnel matters, including the fact that West Virginia Code § 8-10-1 delineates the various "powers and duties of mayor" with respect to municipalities in West Virginia when those powers are "not otherwise provided by charter provision or general law." Given that the City does not have a charter, the powers and duties of the mayor are governed by West Virginia Code § 8-10-1. That section states that the mayor of every municipality shall be the chief executive officer of such municipality and that the mayor shall have control of the police of the municipality, including the power to appoint special police officers whenever he deems it necessary. *Id.* Therefore, we find that the mayor had the authority to appoint the chief of police of his choosing upon assuming the office of mayor. Because the presumption is at will employment, the employee handbook provides that the list of offenses is not exhaustive, and the mayor had the statutory authority to appoint a new chief of police, we find no error in the circuit court's grant of summary judgment to respondents on this issue.

Petitioner's fourth and final assignment of error is his allegation that the lower court did not apply the law correctly, abused its discretion, and was clearly erroneous by finding that respondents' actions did not rise to the level sufficient to sustain claims for annoyance, inconvenience, humiliation, and intentional infliction of emotional distress. Petitioner argues that he suffered these torts by the actions and inactions of respondents.

> In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

Syl. Pt. 4, *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998).

5

[I]n order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Id.* at 375, 504 S.E.2d at 425. In applying these elements to the conduct alleged by petitioner, we find that the circuit court did not err in determining that respondents' actions did not give rise to a claim of intentional infliction of emotional distress, as it appears from the record that Hines simply informed petitioner of his termination, verbally and in writing. The record also reflects that Hines did not raise his voice, use foul language, or the like in terminating petitioner's employment.

Petitioner's claims for annoyance, inconvenience, and humiliation are closely linked to his claim of emotional distress. As we found previously, "[a] claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious." Syl. Pt. 11, *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996). Based upon our review of the record, we find that petitioner has failed to sustain his burden for these claims. Thus, we find that the circuit court did not err in awarding summary judgment to respondents on this issue.

For the foregoing reasons, we conclude that the circuit court did not err in granting summary judgment in favor of respondents and denying summary judgment to petitioner. Accordingly, we affirm.

Affirmed.

**ISSUED:** April 25, 2014

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin

6